323 P.3d 80

**STATE of Hawai'i, Respondent/Plaintiff–Appellant,**

v.

**Herman DECOITE,
Petitioner/Defendant–Appellee.**

**No. SCWC–30186.**

Supreme Court of Hawai'i.

Feb. 28, 2014.

Craig W. Jerome, (Summer M.M. Kupau with him on the briefs), for petitioner.

Emlyn N. Higa, (Pamela Lundquist with him on the briefs), for respondent.

RECKTENWALD, C.J., NAKAYAMA, and McKENNA, JJ., with ACOBA, J., Concurring Separately, and POLLACK, J., Dissenting Separately.

Opinion of the Court by NAKAYAMA, J.

On application for writ of certiorari, Petitioner–Defendant Herman Decoite (Decoite) asks us to determine whether Abuse of Family or Household Member, HRS § 709–906(1), can be charged as a "continuing course of conduct" offense. On narrower grounds, we hold that an alleged two-year period of domestic abuse could not be charged on a continuing course of conduct theory. Accordingly, we reverse the Intermediate Court of Appeals's (ICA) judgment on appeal and affirm the Circuit Court of the Second Circuit's (family court) order dismissing the State's complaint without prejudice.

## I. BACKGROUND

This case arises out of alleged acts of domestic abuse that Decoite committed against his former girlfriend over the course of their five-year relationship. On April 3, 2009, the State filed a misdemeanor complaint against Decoite, charging him with one count of abuse of a family or household member (domestic abuse) pursuant to Hawai'i Revised Statutes (HRS) § 709–906 (Supp. 2006).[1] The complaint stated in relevant part: "during or about the period between February 1, 2005, through June 1, 2007, inclusive, as a continuing course of conduct, ... Herman Decoite did intentionally, knowingly or recklessly engage in and cause physical abuse of a family or household member[.]"

Decoite requested discovery, and the State produced police reports of two incidents that occurred on November 29, 2006, and March 13, 2007, respectively. Decoite then filed a

motion to dismiss the State's complaint in the family court.[2] Decoite argued that the domestic abuse statute does not permit charging domestic abuse as a continuous crime, and also that the only incidents of alleged domestic abuse produced in discovery fell outside of the applicable two-year statute of limitations. The State responded that the domestic abuse statute punishes "physical abuse," and that because physical abuse can extend beyond isolated moments, it may be charged on a theory of continuing conduct. The State further argued that its complaint against Decoite was not time barred because it had alleged a continuing course of conduct that ended within the two-year statute of limitations.

The family court concluded that domestic abuse cannot be charged on a continuous conduct theory, and issued an order dismissing the State's complaint without prejudice. On appeal, the ICA reversed, holding that in some cases domestic abuse may be charged as a continuous offense. We granted Decoite's application for writ of certiorari to resolve this issue as a matter of first impression.

## II. STANDARDS OF REVIEW

### A. Conclusions of Law

■ Conclusions of law are reviewed *de novo* under the right/wrong standard. *Chun v. Bd. of Trs. of Emps.' Ret. Sys. of Haw.*, 106 Hawai'i 416, 431, 106 P.3d 339, 354 (2005).

### B. Statutory Interpretation

■ When interpreting a statute, this court follows several well established canons of interpretation.

"[O]ur foremost obligation is to ascertain and give effect to the intention of the legislature, which is obtained primarily from the language contained in the statute[s]" themselves. *Mathewson v. Aloha Airlines, Inc.*, 82 Hawai'i 57, 71, 919 P.2d

---

1. HRS § 709–906(1) provided then as it does now: "It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member[.]"

2. The Honorable Richard T. Bissen, Jr. presided.

969, 983 (1996) (citation and quotation signals omitted). Second, "[l]aws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another." HRS § 1–16 (1993); *Richardson v. City and County of Honolulu*, 76 Hawaiʻi 46, 55, 868 P.2d 1193, 1202 (1994) (citation omitted). And, third, "[t]he legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction[,] and illogicality." *State v. Malufau*, 80 Hawaiʻi 126, 137, 906 P.2d 612, 623 (1995) (citation and internal quotation marks omitted).

*State v. Arceo*, 84 Hawaiʻi 1, 19, 928 P.2d 843, 861 (1996) (some citations omitted).

## III. DISCUSSION

### A. Domestic abuse cannot be charged as a continuing conduct offense based on discrete abusive transactions that occurred over a two-year period

■ The conduct element of the domestic abuse statute states in relevant part: "It shall be unlawful for any person ... to physically abuse a family or household member[.]" HRS § 709–906(1) (emphasis added). The narrow issue of this case is whether that conduct, "to physically abuse," permits the State to charge two temporally discrete instances of domestic abuse on a continuous course of conduct theory. The State argues that abusive domestic relationships are defined by a cycle of violence that is motivated by the abuser's singular desire for power and control. Thus, the State would have us hold that temporally discrete acts of abuse can all be linked to one continuous criminal impulse that forms the basis of one crime. However, HRS § 709–906(1) criminalizes "physical abuse," which is conduct that is necessarily discrete and episodic. In fact, the discrete nature of the *actus reus* of domestic abuse is a crucial element of the statutory scheme's graduated penalty structure, which is specifically tailored to punish repeated acts of

abuse separately and with increasing severity. Accordingly, we hold that HRS § 709–906(1) does not permit charging temporally discrete episodes of domestic abuse that occurred over a two-year period as a continuous course of conduct offense.[3]

■ The test to determine whether a crime may be charged on a continuous conduct theory is whether the language, structure, and purpose of the statute reveals a legislative intent to criminalize continuing conduct. *See* HRS § 701–108(4) (supp.2006) ("An offense is committed either when every element occurs, or, if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct ... is terminated."); *see also Arceo*, 84 Hawaiʻi at 19, 928 P.2d at 861 (stating that an offense may be deemed continuous if it is statutorily defined as an uninterrupted and continuing course of conduct, or manifests a plain legislative purpose to be treated as such, or both). Additionally, a crime may only be charged on the theory of continuing conduct if the statute actually prohibits conduct that may be deemed continuous. *See State v. Rabago*, 103 Hawaiʻi 236, 253, 81 P.3d 1151, 1168 (2003) (rejecting the legislature's attempt to define the continuing sexual abuse of a minor as a continuous offense because the *actus reus* of the statute was actually targeting a series of necessarily discrete criminal acts).

■ This court has defined a continuous offense as "a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy[.]" *Arceo*, 84 Hawaiʻi at 18, 928 P.2d at 860 (quoting *State v. Temple*, 65 Haw. 261, 267 n. 6, 650 P.2d 1358, 1362 n. 6 (1982)). "The test to determine whether [a] defendant intended to commit more than one offense in the course of a criminal episode is whether the evidence discloses one general intent or discloses separate and distinct intents." *State v. Castro*, 69 Haw. 633, 653, 756 P.2d 1033, 1047 (1988) (citations omitted). "If there is but one in-

---

**3.** However, a single violent transaction comprised of, for example, several punches, may constitute one continuous episode of domestic abuse. The episode terminates when the perpetrator's physically abusive impulse ends.

tention, one general impulse, and one plan, there is but one offense." *Id.*

We first applied this rule in *State v. Martin*, 62 Haw. 364, 369, 616 P.2d 193, 197 (1980), where we held that first degree theft could constitute a continuous offense. There, the defendant periodically filed fraudulent public assistance forms for a six-year period in order to obtain welfare disbursements from the State. *Id.* at 366, 616 P.2d at 195–96. We held that the defendant had committed a continuing offense because each fraudulent transaction was the continuation of a single and uninterrupted criminal impulse. *Id.* at 369, 616 P.2d at 197 ("We do not view each filing by defendant of a statement of facts supporting continued eligibility as necessarily constituting a new offense, since all statements were identical[.]"); *see also Temple*, 65 Haw. at 267, 650 P.2d at 1362 (holding that theft of a firearm was a continuous offense because the conduct element of the theft statute specifically criminalized the ongoing act of "retaining" stolen property); *State v. Kealoha*, 95 Hawaiʻi 365, 376, 22 P.3d 1012, 1023 (App.2000) (holding that manufacturing a dangerous drug may be a single continuous offense because the general character of "manufacturing" connotes an ongoing process of various steps that are motivated by one uninterrupted impulse).

We have also found continuing conduct in criminal transactions that were temporally quite short. For example, in *State v. Rapoza*, we held that attempted murder in the second degree could constitute a continuing offense. 95 Hawaiʻi 321, 329, 22 P.3d 968, 976 (2001). There, Rapoza discharged a firearm five to seven times in the span of a few seconds while pointing it in the general direction of three complaining witnesses. *Id.* at 323, 22 P.3d at 970. We stated: "As to any given complainant, [Rapoza's] conduct in discharging the firearm several times did not amount to 'separate and distinct culpable acts,' but rather betokened 'a continuous, unlawful ... series of acts set on foot by a single impulse and operated by an unintermittent force[.]'" *Id.* at 329, 22 P.3d at 976 (quoting *Arceo*, 84 Hawaiʻi at 18, 928 P.2d at 860).

■ Turning to the statute at issue in this case, the conduct element of HRS § 709–906(1) makes it a crime to "physically abuse" a family or household member. We have defined the term "physically abuse" for purposes of HRS § 709–906(1) as follows: "To 'physically abuse' someone is to maltreat in such a manner as to cause injury, hurt or damage to that person's body." *State v. Fields*, 115 Hawaiʻi 503, 530, 168 P.3d 955, 982 (2007) (citations and internal quotations omitted). Physical abuse, so defined, contemplates discrete episodes that are transitory in nature, whether those events occur in isolation or in a series. *Cf. Temple*, 65 Haw. at 267, 650 P.2d at 1362 (distinguishing the non-continuous criminal acts "receive" and "dispose" from the continuous act "retain," because the former are transitory in nature and of a brief duration). In that respect, "physical abuse" is unlike "retaining" a stolen firearm, or "manufacturing" methamphetamine, which involve ongoing processes.

■ Furthermore, the touchstone characteristic of a continuing offense is that it is motivated by a single uninterrupted criminal impulse. *See Martin*, 62 Haw. at 369, 616 P.2d at 197. That domestic abuse may occur repetitively, as the State claims, helps to illustrate that cyclic abuse is a non-continuous crime. First, the State attached to its opposition to Decoite's motion to dismiss sample testimony from a domestic violence expert. That testimony illustrates that in cases of repetitive domestic abuse, many superseding impulses and intermittent forces are at work:

The cycle of violence ... starts off when people first start dating and everything is good, and there's no tension. And the relationship starts to progress, and something will begin to create tension.

So one of the phases in the cycle of violence is called the tension building phase. So during this phase ... something ... starts to create tension and they begin to argue a little bit about it.

And the tension continues to build. And in an abusive relationship, a final outburst will happen. And that's what we call the violent outburst phase. And after—immediately after the violence, typically the

abuser is feeling very remorseful, and sorry, and apologizes, and tries to make repairs, make amends for the behavior. And that's the apologetic, loving reconciliation phase, so that after the violence happens, the abuser is very sorry and conciliatory.

. . . .

And so they bond and become closer. And then we have the honeymoon phase, where everything is good and there is no tension, and life's pretty good. And what happens is we go from the honeymoon phase—and then there is always something that creates tension[.]

As the sample testimony shows, during the "loving reconciliation" phase following a violent incident, a serial abuser typically feels remorse and will try to repair the relationship. In other words, the serial abuser's malignant impulses are frequently interrupted by the contrary impulse to set things right. This characterization of serial abuse does not fit with the definition of a continuing offense, which requires a single, uninterrupted criminal impulse.[4] *See Martin*, 62 Haw. at 369, 616 P.2d at 197.

Second, statutory and case law make clear that the single impulse underlying a continuing offense must be a criminal impulse. *See, e.g., Martin*, 62 Haw. at 369, 616 P.2d at 197 (recognizing that repeated fraudulent filings were motivated by the single criminal impulse to steal from the State); *Temple*, 65 Haw. at 267, 650 P.2d at 1362 (recognizing that retaining a stolen firearm was motivated by the single criminal impulse to steal the firearm); *Kealoha*, 95 Hawaiʻi at 376–78, 22 P.3d at 1023–25 (recognizing that the various steps of methamphetamine production were all motivated by the single criminal impulse to manufacture a dangerous drug). HRS § 701–104 (1993) specifically

states: "The provisions of [the HRS] cannot be extended by analogy so as to create crimes not provided for herein[.]" If we allowed a continuous crime to be founded on a non-criminal impulse, then we would be extending the provisions of the penal code by analogy in direct violation of HRS § 701–104.

Here, the State has posited that a serial abuser is motivated by a single continuous impulse, the desire for power and control in a relationship. However, the *actus reus* of HRS § 709–906(1) is physical abuse. HRS § 709–906(1) does not contemplate psychological abuse. Attempting to exert power and control in a relationship, on its own, is not illegal. Thus, although the desire for power and control merits no praise, it is not a criminal impulse that can support charging domestic abuse on a continuing conduct theory.

Finally, the overarching structure of the domestic abuse statute provides compelling evidence that the legislature intended repeated acts of abuse to be treated as separate crimes. Specifically, the graduated penalty provisions of HRS § 709–906 provide:

(5) Abuse of a family or household member [is a] . . . misdemeanor[ ] and the person shall be sentenced as follows:

(a) For the first offense the person shall serve a minimum jail sentence of forty-eight hours; and

(b) For a second offense that occurs within one year of the first conviction, the person shall be termed a "repeat offender" and serve a minimum jail sentence of thirty days.[5]

. . . .

(7) For a third or any subsequent offense that occurs within two years of a second or

---

**4.** Decoite argues that the ICA erred when it considered the State's proferred evidence. HRAP 10(a) states: "The record on appeal shall consist of the trial court . . . record, as set out in Rule 4 of the Hawaiʻi Court Records Rules[.]" Hawaiʻi Court Records Rules (HCRR) Rule 4 states: "The record of each case . . . shall include: (a) all documents related to the case, including correspondence, submitted for filing in any form[.]" Here, all of the documents that Decoite claims should not be part of the record on appeal were attached to the State's opposition

to Decoite's motion to dismiss. Thus, these documents were properly considered on appeal.

**5.** In *State v. Dudoit*, we held that "the repeat offender provision of HRS § 709–906(5) applies to the commission of successive violations of HRS § 709–906 and not merely to successive convictions of such violations" and that it "may be applied to offenses occurring on the same day." 90 Hawaiʻi 262, 266, 274, 978 P.2d 700, 704, 712 (1999) (capitalization and quotations omitted).

subsequent conviction, the offense shall be a class C felony.

This penalty structure is specifically tailored to address the repetitive and cyclic nature of domestic abuse. It evinces a legislative determination that multiple acts of abuse constitute separate offenses that should be punished separately and with increasing severity. The House Judiciary Committee made this plain when it stated:

> The nature of domestic abuse is such that ongoing violence is not uncommon and, in fact, has the great likelihood of becoming more serious and increasing in frequency. Your Committee understands that uniform sanctions applied in a graduated way in response to these serious offenses will deliver a strong message to the offenders[.]

H. Stand. Comm. Rep. No. 20–92, in 1992 House Journal, at 906. Charging multiple discrete acts of domestic abuse as a single continuous crime, as the State did here, conflicts with the domestic abuse statute's graduated penalty structure.

In sum, the family court properly dismissed the State's complaint because it defectively charged Decoite with domestic abuse under a continuing course of conduct theory. As a matter of law, an alleged two-year period of domestic abuse can never be charged as a continuous conduct offense.[6]

## IV. CONCLUSION

For the foregoing reasons, we reverse the ICA's judgment on appeal and affirm the family court's order dismissing the State's complaint without prejudice.

## Concurring Opinion by ACOBA, J.

A statute permits charging conduct as a continuing course of conduct if the crime is "statutorily defined as an uninterrupted and continuing course of conduct, or manifests a plain legislative purpose to be treated as such, or both." State v. Arceo, 84 Hawai'i 1, 9, 928 P.2d 843, 861 (1996). Here, Petitioner/Defendant–Appellee's Herman Decoite (Petitioner) was charged with physical abuse

of a household or family member. Pursuant to HRS 709–906(1), it is "unlawful for any person ... to physically abuse a family or household member." "Physically abuse" is defined as "to maltreat in such a manner as to cause injury, hurt, or damage to that person's body[.]" State v. Nomura, 79 Hawai'i 413, 416, 903 P.2d 718, 721 (App.1995). Thus, it is apparent that the legislature intended that each individual act of physical abuse, i.e., each act done with a separate intent to cause injury, hurt or damage to another person, see State v. Martin, 62 Haw. 364, 368, 616 P.2d 193, 196 (1980), would be a separate offense, rather than a continuing course of conduct.

It has been explained that "the applicable test in determining whether there is a continuing crime [i.e., a criminal act] is whether the evidence discloses one general intent or discloses separate and distinct intents.... [I]f there is but one intention, one general impulse, and one plan, even though there is a series of transactions, there is but one offense." Martin, 62 Haw. at 368, 616 P.2d at 196 (internal quotation marks and citations omitted). Whether two acts were committed with "separate and distinct intents" must be determined on a case-by-case basis, under the facts presented in any specific case. It is not possible to determine that two actions did not constitute a continuing course of conduct based solely on the amount of time separating the two acts.

Under the circumstances presented here, it is apparent that Petitioner committed two discrete acts of physical abuse. Consequently, under the facts of this case, the conduct of Petitioner did not constitute a continuing course of conduct. I therefore concur in the result vacating the decision of the Intermediate Court of Appeals and affirming the decision of the Family court of the First Circuit dismissing the complaint against Petitioner without prejudice.

## Dissenting Opinion by POLLACK, J.

I respectfully disagree with the majority's holding that as a matter of law "an alleged

---

6. Our holding does not prevent a criminal defendant from invoking HRS § 701–109(1)(e) (1993) in an attempt to merge multiple counts of domestic abuse that factually arise from a single, discrete criminal transaction. See discussion supra at n. 3.

two-year period of domestic abuse could not be charged on a continuing course of conduct theory." Majority Opinion at 437, 323 P.3d at 81. Additionally, I disagree with the majority's conclusion that "physical abuse," under Hawai'i Revised Statutes (HRS) § 709–906(1) (Supp.2006),[1] "is conduct that is necessarily discrete and episodic." *Id.* at 438, 323 P.3d at 82. In my view, the new "temporally discrete episodic" test set forth by the majority will hamper, in certain circumstances, prosecution of a charge of abuse of family or household members and cause uncertainty in the trial courts in applying the new standard.

Consequently, I agree with that portion of the Intermediate Court of Appeals' (ICA) ruling, which held that the circuit court erred in dismissing the complaint based on its determination that abuse of family or household members was not a continuing offense. However, because the dismissal of the complaint also rested on the circuit court's determination that the complaint was brought beyond the statute of limitations and the court made no findings of facts as required by Rule 12(e) of the Hawai'i Rules of Penal Procedure (HRPP), I believe the case should be remanded to the circuit court to enter findings as the court's ruling is essentially unreviewable in its current form.

## I.

Whether statutory construction permits a "continuous offense" to be charged as a particular criminal offense is a question of law. It is therefore entirely separate from the question of fact of whether a defendant's conduct in a particular case constitutes a continuing offense. The determination in a particular case, which may include the question of whether the act or series of acts were motivated by a "single impulse," *see* infra, must be reserved for the finder of fact.

## A.

As to whether a particular criminal offense can be charged as a continuous offense as a matter of law, we look first to the provisions of the statute. "Conduct" is defined as "an act or omission, or, where relevant, a series of acts[.]" HRS § 701–118(4). "An offense is committed either when every element occurs, or, if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct ... is terminated." HRS § 701–108(4).

An offense that may be charged as a continuing offense permits culpable acts to be charged as separate offenses or as a continuing offense. The acts may be charged by the prosecutor as a continuing offense when the defendant's conduct is alleged to be motivated by a single intention, one general impulse and one plan. When each act is alleged by the prosecutor to have been committed with a separate intent, then each act may be brought as a separate offense. "The State generally has wide discretion in bringing criminal charges." *State v. Decoite*, SCWC–30186, 2013 WL 1759007 at *7 (App. Apr. 24, 2013) (citing *State v. Radcliffe*, 9 Haw.App. 628, 639–40, 859 P.2d 925, 932 (1993) and *United States v. Batchelder*, 442 U.S. 114, 124, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979)) ("Whether to prosecute and what charge to file or bring ... are decisions that generally rest in the prosecutor's discretion.")

## B.

The test for determining whether a crime can be charged as a "continuing course of conduct" offense is whether the plain language of the statute describes conduct that can extend beyond "isolated moments," and whether the legislature intended the crime to be treated as such. For instance, in *State v. Martin*, 62 Haw. 364, 616 P.2d 193 (1980), the language of the theft statute was held to have manifested an intent to allow the conduct to be charged as continuing by the plain language of the statute:

1. HRS § 709–906(1) provides, in relevant part:
   It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member[.]
   HRS § 709–906 was revised in 2002 and 2006. *See* HRS § 709–906 (Supp.2010). None of the relevant portions of HRS § 709–906 were altered from February 1, 2005, through June 1, 2007, the period Decoite was charged with violating HRS § 709–906. HRS § 709–906 (Supp.2002); HRS § 709–906 (Supp.2006).

The language of the theft statute plainly manifests a legislative intent to prohibit continuing conduct since two elements of the pertinent crime ... involve conduct that can extend beyond isolated moments[.]

*Id.* at 371–72, 616 P.2d at 198 (per curiam) (emphasis added). In *Martin,* the issue presented was whether a defendant could be properly charged with theft in the first degree as a continuing course of conduct when the defendant had misrepresented her marital and employment status in order to receive public assistance benefits. *Id.* at 367, 371–72, 616 P.2d at 196, 198. The language identified by the court as indicative of conduct that could extend beyond isolated moments was "deception and the exercise of control over the property of another, ... particularly the former." *Id.* at 371, 616 P.2d at 198. For instance, the court hypothesized that "[c]onduct deceptive enough to effect grand theft may often entail elaborate schemes of extended conduct." *Id.* at 364, 371–72, 616 P.2d at 198.

The majority recognizes that crimes can be charged as a continuous offense in a variety of circumstances, including theft in the first degree, theft of a firearm, manufacturing a dangerous drug, and attempted murder. Majority Opinion at 438–39, 323 P.3d at 82–83. In addition, examples of crimes that may be charged as continuing offenses include first degree murder, first degree robbery, and under certain circumstances, kidnapping. *State v. Arceo,* 84 Hawai'i 1, 18, 928 P.2d 843, 860 (1996).[2] Each of these offenses has been held to manifest a plain intent to allow treatment as a continuing course of conduct. *See id.* at 19, 928 P.2d at 861.

In *Arceo,* by contrast, the structure of the statute did, in fact, preclude charging separate acts of sexual assault as a continuing offense. *Arceo,* 84 Hawai'i at 21–22, 928 P.2d at 863–64. In *Arceo,* we noted that

In order to underscore its intent that each distinct sexual offense be subject to separate punishment, the legislature added a definition of "sexual penetration" to HRS § 707–700 ... which provides, inter alia, that for purposes of this chapter, each act of sexual penetration shall constitute a separate offense. [1986 Haw. Sess. L. Act 314], § 48 at 615. The new definition clarified that, even though rape and sodomy were renamed sexual assault offenses, the prosecutors could still multiple charge a defendant for each act of penetration.

*Id.* at 19, 928 P.2d at 861 (brackets and quotations marks omitted) (citing Hse. Conf. Comm. Rep. No. 51–86, in 1986 House Journal, at 938; Sen. Conf. Comm. Rep. No. 51–86, in 1986 Senate Journal, at 748). Further, although HRS § 701–109(1)(e) prohibits multiple convictions where the defendant's actions constitute an uninterrupted and continuing course of conduct, "[t]his prohibition ... does not apply where these actions constitute separate offenses under the law." *Arceo,* 84 Hawai'i at 21, 928 P.2d at 863 (emphasis omitted).

The majority cites to the *Martin* "single impulse" rule for defining a continuing offense. Majority Opinion at 438, 323 P.3d at 82. *Martin* adopted the rule from California. *Martin,* 62 Haw. at 368–69, 616 P.2d at 197. California has accepted that spousal abuse and child abuse may be charged as continuing offenses. *People v. Hamlin,* 170 Cal. App.4th 1412, 1428–29, 89 Cal.Rptr.3d 402, 416–17 (2009).

In *Hamlin,* California considered whether torture could be charged as a continuing conduct offense. The focus of the *Hamlin* court's determination of whether torture could be charged as a continuing offense concentrated on whether the language describing the offense necessarily precluded a continuing offense charge. The court noted that the relevant California law regarding torture

---

2. In *State v. Rapoza,* 95 Hawai'i 321, 22 P.3d 968 (2011), the court explained that the definition of the offenses of attempted second degree murder, attempted first or second degree assault, or first degree reckless endangering, as to which Rapoza was tried, did not "preclude the prosecution from proving that the requisite conduct element was committed by a series of acts constituting a

continuous course of conduct." *Id.* at 330, 22 P.3d at 977. In *State v. Apao,* 95 Hawai'i 440, 24 P.3d 32 (2001), we held that terroristic threatening in the second degree and unlawful imprisonment in the second degree were not defined in such a way as to preclude charging this crime as continuing offenses. *Id.* at 447–450, 24 P.3d at 39–42.

does not require the intent to cause or the actual causing of prolonged pain. But that is not the same thing as saying the prosecution is <u>precluded</u> from proving [prolonged] pain by a course of conduct occurring over time.

*Hamlin*, 170 Cal.App.4th at 1427, 89 Cal. Rptr.3d at 415 (emphasis added) (citations omitted).

The court went on to describe the rationale for allowing the prosecution's use of a continuing course of conduct charge, which was to permit a jury to find a defendant guilty of conduct without coming to a unanimous decision on which particular conduct constituted the crime.

> Decisions on the continuous course of conduct exception [to the jury unanimity rule] have focused on the statutory language in an attempt to determine whether the Legislature intended to punish individual acts or entire wrongful courses of conduct. Certain verbs in the English language denote conduct which occurs instantaneously, while other verbs denote conduct which can occur either in an instant or over a period of time. In the latter situation, where the statute may be violated by a single act or repetitive or continuous conduct, and the charging instrument alleges a course of conduct in statutory terms which occurred between two designated dates, <u>the issue before the jury is whether the accused is guilty of a course of conduct,</u> not whether he committed a particular act on a particular day.

*Id.* at 1427–28, 98 Cal.Rptr. at 415–16 (citations, quotation marks, ellipses, and brackets omitted) (emphasis added). Hawai'i has adopted a similar rule. "[A]specific unanimity instruction is not required if the conduct element of an offense is proved by the prosecution to have been a series of acts constitut-

ing a continuous course of conduct and the offense is statutorily defined in such a manner as to not preclude it from being a 'continuous offense.'" *State v. Rapoza*, 95 Hawai'i 321, 330, 22 P.3d 968, 977 (2001). As we explained in *State v. Apao*, 95 Hawai'i 440, 24 P.3d 32 (2001),

> conduct can either represent *"separate and distinct culpable acts"* or an uninterrupted continuous course of conduct, but not both. . . . [A] specific unanimity instruction is not required if (1) the offense is not defined in such a manner as to preclude it from being proved as a continuous offense and (2) the prosecution alleges, adduces evidence of, and argues that the defendant's actions constituted a continuous course of conduct

*Id.* at 447, 24 P.3d at 39.

Therefore, crimes <u>may</u> be charged as continuing conduct offenses where the language of the statute contemplates conduct that extends beyond isolated moments.[3] In contrast, conduct may not be charged as a continuing offense if the conduct itself is defined in such a manner that distinct acts are prescribed as separate offenses. *Arceo*, 84 Hawai'i at 21–22, 928 P.2d at 863–64.

i.

The title of the offense "Abuse of family or household members" suggests a continuing offense. Abuse means "[t]o damage (a thing); [t]o depart from legal or reasonable use in dealing with (a person or thing); to misuse; [t]o injure (a person) physically or mentally." Black's Law Dictionary 11 (9th ed. 2009). Words such as "dealing with" or "misuse" may encompass a singular action or multiple actions. Therefore, the title "abuse" conveys inclusion of conduct that is durational.[4]

---

**3.** We have also stated that a crime may be charged as a continuing offense "so long as an offense is not statutorily defined in such a manner as to provide that the requisite conduct element <u>cannot</u> be satisfied by a series of acts constituting a continuous course of conduct[.]" *See Rapoza*, 95 Hawai'i at 330, 22 P.3d at 977 (emphasis added); *see also Apao*, 95 Hawai'i at 447, 24 P.3d at 39 (holding that a crime may be charged as a continuous offence so long as "the offense is not defined in such a manner as to

preclude it from being proved as a continuous offense").

**4.** Although the circuit court found that abuse of family or household members was not a continuing offense, the court stated:

> If you were to ask any person: Can an abuse or can a physical abuse, which is the term we are looking at, physical abuse, can that extend beyond isolated moments? I think the answer is yes. The short answer to that is yes. I don't

Turning to the language of the statute, HRS § 709–906(1) sets forth the proscribed conduct, inter alia, to "physically abuse" a family or household member. This court defined the term "physically abuse" as "to maltreat in such a manner as to cause injury, hurt, or damage to that person's body." *State v. Nomura,* 79 Hawai'i 413, 416, 903 P.2d 718, 721 (App.1995). Maltreat means to "treat badly" and is synonymous with "mistreat." *State v. Samter,* 4 Or.App. 349, 479 P.2d 237, 239 (1971). Under the District of Columbia Code, maltreat means to "treat roughly or unkindly; abuse" and includes any act of maltreatment, not limited to physical torture or beating. *Bradley v. United States,* 856 A.2d 1157, 1162 (D.C.2004). *See also State v. Danforth,* 129 Wis.2d 187, 385 N.W.2d 125, 130 (1986) (defining maltreat to mean "to treat badly or to abuse another"). Mistreatment and maltreatment are all forms of conduct that may extend beyond isolated moments. Therefore, the term "physically abuse," was defined by this court in a manner that allows "continuous conduct."

Further, the plain language of HRS § 709–906 indicates that the offense is potentially continuous. For instance, subsections (2) and (3) refer to abuse as ongoing conduct.

 2. Any police officer, with or without a warrant, may arrest a person if the officer has reasonable grounds to believe that the person <u>is physically abusing, or has physically abused,</u> a family or household member and that the person arrested is guilty thereof.

 3. A police officer who has reasonable grounds to believe that the person <u>is physically abusing, or has physically abused,</u> a family or household member shall prepare a written report.

HRS §§ 709–906(2)–(3) (emphases added). Thus, Section 709–906 defines the offense: in the present tense, "is physically abusing"; in the past tense, "has physically abused"; and in the infinitive form, "to physically abuse."

HRS § 709–906(1)–(3). Therefore, because the statute provides that a person could "physically abuse," be "physically abusing," and have "physically abused" another person, it contemplates that physical abuse can extend beyond isolated moments.

Similarly, the offense of abuse of family or household members provides a list of potential actions that an officer may take if there are "reasonable grounds to believe that there was <u>physical abuse or harm</u> inflicted by one person upon a family or household member, regardless of whether the physical abuse or harm occurred in the officer's presence." HRS § 709–906(4). The phrase "physical abuse or harm" is broader than an isolated incident. Harm incorporates "injury, loss, damage; material or tangible detriment." Black's Law Dictionary 784 (9th ed. 2009). The term "physical abuse or harm" or "physically abuse or harmed" appears seven times in the statute, indicating that the section contemplates conduct that extends beyond isolated moments. HRS §§ 709–906(4)(a)–(b), (e), (10), (14).

Furthermore, the statute empowers police to order a person whom the police reasonably believe to represent a danger of <u>"further physical abuse or harm being inflicted</u> ... upon a family or household member" to leave the premises for 48 hours. HRS § 709–906(4)(b) (Supps. 2002, 2006) (emphasis added).[5] If the person refuses to leave or reinitiates contact, the police are empowered to arrest the person "for the purpose of preventing <u>further</u> physical abuse or harm to the family or household member." HRS 709–906(4)(e) (emphasis added). The use of "further" clearly suggests conduct of an on-going nature.

Therefore, the plain language of HRS § 709–906(1) encompasses "conduct that can extend beyond isolated moments."

even think the defense would disagree that that would be possible and that that could—I don't believe, however, that that is the only factor that the Court needs to determine, or as the State says, to test. And I make that finding as clear as I can on the record so that, again, this matter can be appealed.

5. In 2013, the legislature increased the cooling off period from 24 to 48 hours. HRS § 709–906(4)(b) (Supp.2013). At the time of the alleged conduct herein, the cooling off period was 24 hours.

### ii.

The underlying legislative intent of HRS § 709–906 also supports the interpretation of abuse of a family or household members as an offense of a potentially continuous course of conduct. In addressing legislative intent, the majority's sole contention is that the graduated penalty provisions of HRS § 709–906 is evidence that the legislature intended "repeated acts of abuse to be treated as separate crimes." Majority Opinion at 440, 323 P.3d at 84. However, the title of the provision "Abuse of Family or Household Members," in concert with the statutory provisions, signals the legislature's appreciation of the unique family and household setting and the need to address these inherently continuous relationships.

First, the graduated penalty provisions were added in 1992, nineteen years after the statute was first adopted in 1973. 1992 Haw. Sess. Laws Act 290, § 7 at 750; HRS § 709–906. It is unlikely that the penalty enhancements were intended to redefine the offense to one that could not be defined as continuing. These provisions reflect the legislature's intent to increase deterrence, "rather than an intent to influence the State's charging decisions." *State v. Decoite*, No. 30186, 2013 WL 1759007, at *6 (App. Apr. 24, 2013). Further, the graduated penalty provisions are not separately enumerated offenses, as in *Arceo*.

Second, foreclosing the option of filing a continuous charge frustrates legislative intent to increase deterrence. Considering the scope of practically limitless factual scenarios, permitting the charging of abuse of family or household members as a continuing offense enhances deterrence in accordance with the legislature's intent.

It would appear that the State would seek greater penalties and likelihood of conviction rather than less. Continuous offense charges, as opposed to multiple charges based upon separate conduct, are inherently more difficult to prove. The consequences of failure are much greater because the defendant may be acquitted of all the charged conduct instead of being acquitted of one or more, but not all, of the charges. Therefore, prosecutors are unlikely to charge acts separate in time as a continuing offense unless the evidence lends itself to being interpreted in a manner that indicates that the acts were motivated by a one intention, one general impulse and one plan. However, the majority's new "temporally discrete episodic" rule restricts the State's flexibility to prosecute abusive conduct in the manner the conduct was manifested.

Third, the structure of HRS § 709–906 indicates that the legislature recognized the unique features of domestic violence, which inherently involves <u>continuous relationships</u> and the potential of repeated acts. For example, the statute provides for a unique "cooling off" period, under which police, without a warrant, may order a person reasonably believed to have abused a family or household member to leave the premises for 48 hours.[6] HRS § 709–906(4)(b). The legislature had two primary purposes in establishing the cooling-off period.

> [First,] to separate the abused and abusive parties to allow tempers to cool and to prevent further abuse against the abused party; and [second] to allow the abused party time to seek a temporary restraining order or alternative shelter. The legislature also recognized that domestic violence was a growing community problem and desired to provide the police with the resources to protect the abused spouse or household member from <u>escalating violence</u> which might result in that individual's death or serious injury.

*State v. Kapela*, 82 Hawai'i 381, 391, 922 P.2d 994, 1004 (App.1996) (emphasis added). In this context "escalating violence" must be viewed as conduct that the legislature recognized continued beyond the time the police were present. Similarly, one legislator observed:

> Now, truly, we as a society are beginning to recognize that the cooling[-]off period isn't just for Daddy to cool down. <u>The cooling[-]off period is necessary so that the woman can get a temporary restraining order to keep him away from her so he</u>

---

6. *See,* supra, note 5.

doesn't continue beating her and the kids. It's necessary for her to get legal counsel. It's necessary for her to find alternative shelters instead of going into the homeless environment.

*Id.* (quoting 1991 House Journal at 326–27). Therefore, by providing what amounts to an on-demand temporary restraining order (TRO) to police, the legislature recognized that domestic violence is a non-discrete offense; that is, because of the potential of the continuous nature of domestic violence it was necessary to provide police with a device to immediately remove suspected abusers from the home, based only on suspicion and even without a warrant or hearing.

Therefore, the legislature recognized the risk of the continuing nature of domestic abuse and it seems unlikely that the legislature intended to foreclose the possibility of the State's prosecution of abuse as a continuous conduct offense, based upon an artificial time period.

In sum, the history and language of HRS § 709–906 strongly suggests that the legislature recognized the continuous nature of domestic violence, and hence supports the conclusion that a continuous charge is allowed.

## II.

The majority advances two additional arguments in support of its position. Under both arguments, however, the majority's arguments substitute a conclusion of fact, for one of law.

First, the majority relies on the State's sample testimony from another case of a person who works in the field of domestic violence to illustrate situations of repetitive domestic abuse in cycles. That transcript, attached as Exhibit "B" to the State's Memorandum in Opposition to Defendant's Motion to Dismiss the Complaint (Memorandum in Opposition), described a typical cyclical pattern of abuse in which abuse is followed by attempts at reconciliation.[7]

The majority concludes that "this characterization of serial abuse does not fit with the definition of a continuing offense, which requires a single, uninterrupted criminal impulse." Majority Opinion at 440, 323 P.3d at 84.

The "single impulse" test is derived from *Martin,* in which we said

the applicable test in determining whether there is a continuing crime is whether the evidence discloses one general intent or discloses separate and distinct intents[.] [I]f there is but one intention, one general impulse, and one plan, even though there is a series of transactions, there is but one offense.

*Martin,* 62 Haw. at 368, 616 P.2d at 196 (quotation marks omitted) (quoting *People v. Howes,* 99 Cal.App.2d 808, 818–19, 222 P.2d 969, 976 (1950)). In *Martin,* we did not conclude that the relevant offense in that case was a continuing crime in all circumstances as a matter of law, but rather as applied to the particular facts. "Applying this analysis, we find but one intention and plan here and thus conclude there was one offense." *Martin,* 62 Haw. at 369, 616 P.2d at 197 (emphasis added). Therefore, the "single impulse" test should be applied to the facts of a particular case, but should not be used to foreclose, as a matter of law, the potential of charging conduct as a continuing offense based upon the time proximity of the acts.

Second, the majority states that, "the single impulse underlying a continuing offense must be a criminal impulse." Majority Opinion at 440, 323 P.3d at 84. The majority then concludes that because the impulse posited by the State-a desire for power and control in a relationship-is not criminal, then the crime cannot be charged under the continuing conduct theory.[8] Majority Opinion at 440, 323 P.3d at 84. However, whether or not a defendant's intent is criminal is a factu-

---

7. The transcript was not admitted into evidence at the hearing, and therefore the basis for the majority's reliance upon it is unclear.

8. The majority states that "the State has posited that a serial abuser is motivated by a single

continuous impulse [of psychological abuse.] However, the *actus reus* of HRS § 709–906(1) is physical abuse. HRS 709–906(1) does not contemplate psychological abuse." Majority Opinion at 440, 323 P.3d at 84. As the "single impulse" test is a measurement of the state of

al matter relevant to determining whether a particular series of acts by a defendant may be deemed continuous. This court should not determine as a matter of law whether future defendants have or do not have criminal intent to engage in continuing conduct depending upon the time period of the abuse.

### III.

The majority concludes that, as a matter of law, "an alleged two-year period of domestic abuse could not be charged on a continuing course of conduct theory." Majority Opinion at 437, 323 P.3d at 81. Consequently, the majority's decision creates a test of "temporal discreteness" such that a series of criminal episodes not in sufficient temporal proximity, could not, as a matter of law, have been committed with "one intention, one general impulse, and one plan. It is unclear to me why this is true, and equally unclear is what will be the proximity dividing line? Are temporally discrete episodes of physical abuse that occur several hours, weeks, or days apart, as opposed to several months as in this case, also precluded from being charged as a continuous offense?

In my view, the determination in a particular case, as to whether the act or series of acts were motivated by a "single impulse," is reserved for the finder of fact based on the evidence produced at the trial. The new test will increase uncertainty, and force trial courts, and eventually this court, to decide whether episodes are sufficiently temporally proximate to survive a dismissal motion as a matter of law.

Additionally, I disagree with the majority's conclusion that "physical abuse," under HRS § 709–906(1), "is conduct that is necessarily discrete and episodic." Majority Opinion at 438, 323 P.3d at 82. Whether conduct is continuing is dependent upon the single impulse test that evaluates the state of mind of a defendant, and is not based upon a court determination of an acceptable time frame for commission of a continuing offense.

Further, it would appear on its face that the "temporally discrete" test is not necessarily limited to the offense of abuse of family or household members, but may apply to

mind of a defendant, this seems to conflate *actus reus* and *mens rea*.

any crime charged as a continuing offense, multiplying the temporal determinations that our courts may be forced to parse and adjudicate.

Finally, it is always the State's responsibility to prove beyond a reasonable doubt that the facts demonstrate "one intention, one general impulse, and one plan" in order to constitute a continuing course of conduct. Adding the "temporally discrete" test adopted by the majority may create an additional burden for the State, even assuming that the issue of temporal proximately has been determined as a matter of law.

Accordingly, the time gap between any set of discrete episodes alleged as a continuing course of conduct should not be predetermined by this court to be barred as a matter of law. This is especially true in light of the fact that HRS § 709–906 clearly indicates an intent to allow criminality to be ascribed to a continuous course of abusive conduct.

### IV.

On April 3, 2009, the prosecution in its written complaint alleged a continuing conduct offense against Decoite. The complaint stated as follows:

> That during or about the period between February 1, 2005, through June 1, 2007, inclusive, as a continuing course of conduct, in the County of Maui, State of Hawaii, HERMAN DECOITE did intentionally, knowingly or recklessly engage in and cause physical abuse of a family or household. member, to wit, [the complainant], thereby committing the offense of Abuse of Family or Household Member in violation of Section 709–906 of the Hawaii Revised Statutes.

(Emphasis added).

Abuse of family or household members is a misdemeanor offense for a first or second offense. HRS § 709–906(5). A prosecution for a misdemeanor offense must commence within two years after it is committed.[9] HRS § 701–108(2)(e).

Since the complaint was filed on April 3, 2009, the statute of limitations on conduct

9. HRS § 701–108(3) provides exceptions to the statute of limitations that are not relevant here.

before April 3, 2007 had expired in the absence of the allegation of criminal conduct beginning February 1, 2005 through June 1, 2007.

Therefore, in order for the continuing course of conduct charge to fall within the limitation period, the State was required to show evidence of specific conduct that occurred between April 3, 2007 and June 1, 2007.[10]

## A.

At the hearing on Decoite's Motion to Dismiss the Complaint (Motion to Dismiss), Decoite argued that the State was attempting to circumvent the applicable statute of limitations by charging the offense as a continuing course of conduct. Decoite stated to the court that the discovery provided by the State consisted of police reports regarding two incidents that occurred on November 29, 2006 and March 13, 2007, and "the State makes mention of multiple abuses in its memorandum in response to the defendants motion to dismiss [but][n]one of these abuses have been documented in [ ] discovery[.]"[11] The State responded that "if you are going to have a valid continuing course of conduct charge, whatever the last event is, that's when the statute of limitations starts." The State also noted that it had "presented some new materials this time in analyzing the issue."

Apparently, the prosecutor was referencing the exhibits that were attached to the Memorandum in Opposition: a temporary restraining order (TRO) filed on July 9, 2009, attached as "Exhibit A," and a transcript from another case of an individual who worked in the field of domestic violence, attached as Exhibit "B." Neither the TRO nor the transcript was admitted into evidence at the hearing.

The circuit court in granting the Motion to Dismiss based its ruling both on its conclusion that HRS § 709–906 does not allow a continuing offense to be charged and premised upon a violation of the statute of limitations.

The Court also finds that that is—there was no intention that the statute of limitations be extended to allow for this type of charging, nor was it intended that the State be allowed to introduce in evidence that would not ordinarily be allowed into the trial by merely charging the earlier conduct being able to get before the jury evidence of past behavior that might—that if charged this way, would, of course, be relevant for the State's proof, but if charged the way the Court believes the Legislature intended it to be charged, that very same evidence would not be allowed in in a trial.

(Emphasis added). As stated, the court's ruling was based on a legal determination, and no findings of facts were rendered.

[T]he court does not agree that this statute can be charged or should be charged as a continuing course of conduct, and for that reason the Court grants the defense's motion to dismiss without prejudice, to dismiss the charge brought. The Court bases that on an invalid charge, as well as the statute of limitations on that—on some of those—on some of that period.

(Emphasis added)

The court also did not make any factual findings with regard to the statute of limitations violation in its Conclusions of Law and Order Granting Defendant's Motion to Dismiss Complaint (Conclusions and Order), filed October 23, 2009.[12]

While it is my view that the ICA correctly concluded that abuse of family or household members is a continuing offense, I believe that the ICA should not have rendered its

---

**10.** Compare the continuing offense charge in the case with that in *Martin,* where the date of last false statement of public assistance eligibility within the theft limitation period was definitive in establishing that the continuing course of conduct charge was timely. 62 Haw. at 372, 616 P.2d at 198.

**11.** The police reports pertaining to the incidents on January 29, 2006 and March 13, 2007 predate April 3, 2007, and therefore do not evidence conduct within the limitations period.

**12.** The court's Conclusion and Order did not reference the statute of limitations violation at all.

own decision on the statute of limitations issue in light of the state of the record. The ICA held as follows:

> Here, in opposition to Decoite's motion to dismiss, the State proffered evidence that during the period alleged in the complaint, Decoite had engaged in continuous and repeated acts of violence against the CW, as well as expert testimony that abusive relationships involve a pattern and cycle of violence in which the batterer is attempting to exercise power and control over his or her partner. Under the circumstances of this case, we cannot say that the State's charge against Decoite for violating HRS § 709–906(1) as a continuous course of conduct was impermissible.
>
> . . . .
>
> Of course, to avoid being barred by the statute of limitations, the State will have to prove that Decoite committed the alleged offense through a course of conduct which continued into the limitations period. Based on the existing record, we cannot say that the State will be unable to meet this burden.

*Decoite*, 2013 WL 1759007, *7 (App. Apr. 24, 2013) (emphases added). In light of the record, the ICA erred in reaching a determination upon the statute of limitations challenge by Decoite.

> HRPP Rule 12(e) provides as follows:
>
> (e) Ruling on motion. A motion made before trial shall be determined before trial unless the court orders that it be deferred for determination at the trial of the general issue or until after verdict; provided that a motion to suppress made before trial shall be determined before trial. Where factual issues are involved in determining a motion, the court shall state its essential findings on the record.

HRPP Rule 12(e) (Emphasis added.) In this case, factual issues were necessarily involved in determining the motion to dismiss for an alleged violation of the statute of limitations. To resolve the motion to dismiss upon the statute of limitations ground, the court was

required to determine whether the State would be able to adduce evidence of an incident of abuse that had occurred during the period between April 3, 2007 and June 1, 2007.[13] The lower court did not make such a determination, despite separately granting the Motion to Dismiss based on a statute of limitations violation. It was incumbent upon the court to make factual findings pertaining to its statute of limitations ruling, as the court's decision should have been dependent upon such findings.

In *State v. Anderson*, 67 Haw. 513, 693 P.2d 1029 (1985), the validity of the search and seizure depended on the weighing of a myriad of factual determinations. The lower court, however, made no findings of fact. This court concluded that it was not possible to determine the factual basis for the lower court's ruling.

> Hawaii Rules of Penal Procedure (HRPP) Rule 12(e) states that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record." It is without dispute that the trial court failed to make any findings. It is also without question that this court has the responsibility of reviewing decisions of the lower courts. Hawaii Revised Statutes (HRS) § 602–5 (Supp. 1984). Because such findings are imperative for an adequate judicial review of a lower court's conclusions of law, we hold that cases will be remanded when the factual basis of the lower court's ruling cannot be determined from the record.

*Id.* at 514, 693 P.2d at 1030 (emphasis added). Accordingly, the case was remanded to the circuit court for further proceedings. *Id.* See also *State v. Hutch*, 75 Haw. 307, 861 P.2d 11 (1985) (defendant's HRPP 48(b) motions were demonstrably "pretrial motions" within the meaning of HRPP 12(b) and the lower court erred in denying the motions without stating the essential findings on the record in accordance with HRPP 12(e) and thus the lower court's order was vacated and remanded for entry of findings); *State v.*

---

**13.** The ICA relied upon Exhibits A and B, which were not submitted into evidence at the motion to dismiss. The Hawaiʻi Rules of Evidence of (HRE) are applicable to HRPP Rule 12(b) motions, including a pretrial motion to dismiss for a violation of the statute of limitations. *See* Hawaiʻi Rules of Evidence Rule 1101.

*Reed,* 70 Haw. 107, 762 P.2d 803 (1988) (holding that additional fact-finding was necessary to resolve the legality of the contraband seizure, and case remanded to lower court to issue findings and conclusions).

Factual "findings are imperative for an adequate judicial review of a lower court's conclusions of law." *Anderson,* 67 Haw. at 514, 693 P.2d at 1030 (1985). It appears that the ruling in this case was based on a legal determination rather than a factual determination. Thus, the ICA should not have resolved the statute of limitation issue on appeal, without the circuit court having rendered factual findings.

### B.

Accordingly, I believe that the ICA judgment should be affirmed to the extent that it vacated the order of dismissal, but the case should be remanded to the circuit court to enter factual findings regarding Decoite's motion to dismiss for violation of the statute of limitations.