Electronically Filed
Supreme Court
SCWC-16-0000413
18-MAR-2019
07:51 AM

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

STATE OF HAWAI'I, Respondent/Plaintiff-Appellant,
vs.
LAURA PITOLO, Petitioner/Defendant-Appellee.

_____

SCWC-16-0000413

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000413; CR. NO. 15-1-0407)

MARCH 18, 2019

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.   Introduction

This case arises out of the Circuit Court of the First Circuit's ("circuit court")[1] dismissal of criminal charges based on the statute of limitations. Section 701-108(3)(a) of the Hawai'i Revised Statutes ("HRS") enables prosecution to be commenced "within three years after discovery of the offense by an aggrieved party or by a person who has a legal duty to represent an aggrieved party and who is oneself not a party to

_____

[1]   The Honorable Rom A. Trader presided.

the offense," despite the expiration of the statute of limitations if the charged offense contains an element of "fraud, deception . . . or a breach of fiduciary obligation[.]"[2]

The circuit court dismissed all six counts of theft filed by the State of Hawai'i ("State") against Laura Pitolo ("Pitolo") on the grounds that the March 17, 2015 felony information was filed after any extension of the three-year statute of limitations based on HRS § 701-108(3)(a) had expired.  After the State appealed, in a published opinion, the Intermediate Court of Appeals ("ICA") reinstated Counts 4, 5, and 6.  State v. Pitolo, 141 Hawai'i 131, 406 P.3d 354 (App. 2017).  Pitolo seeks certiorari review of the ICA's reinstatement of those counts.

We hold that the ICA did not err by reinstating Counts 4 through 6 because there are questions of fact regarding the statute of limitations applicable to those counts that must be determined by the factfinder, the jury, and the circuit court therefore erred by dismissing these charges.  As factual issues exist, however, the ICA erred by ruling that the earliest date of the "discovery of [Counts 4 through 6] by an aggrieved party or by a person who has a legal duty to represent an aggrieved party and who is oneself not a party to the offense" under HRS §

---

[2]    In no event, however, does HRS § 701-108(3)(a) extend the statute of limitations by more than six years after the expiration of the statute of limitations prescribed in HRS § 701-108(2).  HRS § 701-108(3)(a) (2014).

701-108(3)(a) was the State Department of Human Services'
("DHS") September 5, 2013 commencement of an investigation
regarding the allegations.  Pitolo, 141 Hawai'i at 143, 406 P.3d
at 366.

## II.  Background

### A.  Factual Background

Pitolo is a former employee of Waianae Community Outreach
("WCO"), a non-profit organization funded in part by DHS to
provide services to houseless people of O'ahu's Leeward Coast.
Pitolo left her position with WCO in early May 2010.

WCO Executive Director Sophina Placencia ("Placencia")
allegedly then discovered some questionable checks written by
Pitolo on WCO funds on May 27, 2010.  Placencia filed a report
with the Honolulu Police Department ("HPD") on August 7, 2010,
accusing Pitolo of theft from WCO.  Placencia alleged she had
discovered eight unauthorized checks written by Pitolo.  On
August 16, 2010, Placencia reported to HPD an additional twenty-
nine unauthorized checks allegedly written by Pitolo.  These
thirty-seven checks included checks allegedly written by Pitolo
to herself, to her friend and co-worker, Jayme Windsor,[3] and to
her father, Pulouoleola Salausa.

---

[3]      Jayme Windsor is also referred to as "Jamye Windsor" throughout the
record.  For consistency, we use the spelling "Jayme" throughout this
opinion.
(continued. . .)

HPD did not further investigate the allegations against Pitolo, allegedly because of an inability to locate the individuals that were allegedly also involved and based on an alleged "failure to obtain additional documents from Ms. Placencia."  As it turns out, Placencia, who reported Pitolo's alleged theft from WCO, had herself stolen WCO funds for personal use from 2007 to 2013.[4]

Almost three years later, on July 25, 2013, WCO filed a civil complaint against Pitolo, alleging that, during the course of Pitolo's employment with WCO, Pitolo made various unauthorized transactions totaling approximately $762,046.25. WCO's complaint asserted that from 2007 to 2010, Pitolo converted WCO funds to her own use through ATM cash withdrawals, debit purchases using WCO's debit card, and by writing checks from WCO's bank accounts to herself as well as friends and family members, who cashed the checks for Pitolo at a local bank and then shared the funds with her.[5]

---

(. . . continued)

[4]    Placencia was charged by felony information on March 23, 2015 and eventually pled no contest to four counts of Theft in the First Degree and one count of Theft in the Second Degree.  Placencia was sentenced to a four-year term of probation and was ordered to pay a total of $554,495.43 in restitution to DHS.

[5]    WCO's civil complaint accused Pitolo of issuing checks totaling $60,844.60 to Jayme Windsor, $169,215.00 to Pulouoleola Salausa, and $141,190.87 to herself.  The civil complaint also asserted Pitolo withdrew a total of $390,795.78 from WCO's bank accounts by making unauthorized ATM or direct cash withdrawals at WCO's bank.

4

After the filing of the civil lawsuit, DHS began an investigation and audit of WCO's finances and accounting practices on September 5, 2013. After Department of the Attorney General ("DAG") Chief Special Agent Daniel Hanagami ("Hanagami") became aware of a news broadcast regarding the allegations against Pitolo, DAG began an investigation into WCO's financial practices on November 13, 2013. Shortly thereafter, DAG investigators took over the investigation from DHS and obtained all relevant records and documents in DHS's possession. During its investigation, DAG discovered additional alleged unauthorized transactions not specified in Placencia's 2010 police reports.

**B.  Circuit Court Proceedings**

**1.  Felony Information**

On March 17, 2015, DAG filed the felony information that is the subject of this appeal, charging Pitolo with five counts ("Counts 1 through 5") of Theft in the First Degree, in violation of HRS §§ 708-830(2)[6] and 708-830.5(1)(a),[7] and one

---

[6]    HRS § 708-830(2) (2006) provides: "Property obtained or control exerted through deception. A person obtains, or exerts control over, the property of another by deception with intent to deprive the other of the property."

[7]    HRS § 708-830.5(1)(a) (Supp. 2006) provided, in relevant part: "A person commits the offense of theft in the first degree if the person commits theft . . . [o]f property or services, the value of which exceeds $20,000[.]" "Theft in the first degree is a class B felony." HRS § 708-830.5(2).

count ("Count 6") of Theft in the Second Degree, in violation of HRS §§ 708-830(2) and 708-831(1)(b).[8]

Counts 1 through 5 allege that Pitolo, in separate continuing courses of conduct, "did obtain or exert control over the property of the [State] and/or [WCO] by deception, with the intent to deprive the [State] and/or [WCO] of the property," which exceeded $20,000 in value, specifically: in Count 1, by writing unauthorized checks from WCO to Jayme Windsor from February 13, 2009 to July 16, 2010; in Count 2, by writing unauthorized checks from WCO to Pulouoleola Salausa from December 8, 2008 to April 16, 2010; in Count 3, by writing unauthorized checks from WCO to herself from March 16, 2007 to July 6, 2010; in Count 4, by making unauthorized cash withdrawals from a WCO account at ATMs from December 27, 2007 to May 26, 2010; and in Count 5, by making unauthorized debit transactions using a WCO account from January 14, 2008 to June 2, 2009. In Count 6, the State alleges Pitolo "did obtain or exert control over the property of the [State] and/or [WCO] by deception, with the intent to deprive the [State] and/or [WCO] of the property," which exceeded $300 in value, by writing an unauthorized check from WCO to Young Ho Sim. Count 6 pertains

---

[8] HRS § 708-831(1)(b) (Supp. 2012) provided, in relevant part: "A person commits the offense of theft in the second degree if the person commits theft . . . [o]f property or services the value of which exceeds $300[.]" "Theft in the second degree is a class C felony." HRS § 708-831(2).

to one check written to Young Ho Sim, and does not allege a continuing course of conduct.

In each of the six counts, the State alleges the following: "the earliest date of the discovery of the offense by the State of Hawai['])i or by a person who has a legal duty to represent the State of Hawai['])i and who was not a party to the offense was after September 5, 2013," which is the date DHS started its investigation and audit of WCO.

### 2. Motion to Dismiss

#### a. Pitolo's Motion and Arguments

On January 12, 2016, Pitolo filed a motion to dismiss the felony information with prejudice ("motion to dismiss"), asserting the State failed to file the charges within the three-year statute of limitations of HRS § 701-108(2)(d),[9] and failed "to accurately state the date of the earliest discovery of the alleged offenses in the Felony Information" as required by HRS § 701-108(3)(a)[10] and State v. Stan's Contracting, Inc., 111 Hawai'i

---

[9]  HRS § 701-108(2)(d) (2014) provided:  "Except as otherwise provided in this section, prosecutions for other offenses are subject to the following periods of limitation: . . . [a] prosecution for any other felony must be commenced within three years after it is committed[.]"  This section was amended in 2016, but those amendments are not relevant here.

[10]  HRS § 701-108(3)(a) provided:

> (3) If the period prescribed in subsection (2) has expired, a prosecution may nevertheless be commenced for:

(continued. . .)

17, 137 P.3d 331 (2006). Pitolo argued that pursuant to Stan's Contracting, to rely on the statute of limitations extension provision of HRS § 701-108(3)(a), the State was required to allege in the felony information "the earliest date of the 'discovery of the offense by an aggrieved party . . . or person who has a legal duty to represent [the] aggrieved party.'" Stan's Contracting, 111 Hawai'i at 34, 137 P.3d at 348.

Pitolo asserted the "date of discovery" of the charged offenses was sometime in May 2010, when Placencia discovered evidence of the alleged theft. Pitolo contended that based on the alleged May 2010 discovery date, the statute of limitations for all six counts of the felony information expired in 2013, well before the felony information was filed on March 17, 2015. Pitolo asserted that "discovery of the offense" was not extended until September 5, 2013 pursuant to HRS § 701-108(3)(a), as alleged by the State, because of dilatory investigation and prosecution.

---

(. . . continued)

    (a) Any offense an element of which is fraud, deception as defined in section 708-800, or a breach of fiduciary obligation, . . . within three years after discovery of the offense by an aggrieved party or by a person who has a legal duty to represent an aggrieved party and who is oneself not a party to the offense, but in no case shall this provision extend the period of limitation by more than six years from the expiration of the period of limitation prescribed in subsection (2)[.]

Pitolo also argued that the circuit court should not look to when particular checks were discovered, because discovery of one check triggered a duty to investigate. Pitolo further asserted the State may not eliminate particular transactions and selectively prosecute transactions found in a later investigation to avoid the statute of limitations.

### b. State's Arguments

In response, the State conceded that charges based on the thirty-seven checks Placencia allegedly discovered and reported to police in May to August 2010 were time-barred,[11] but insisted that, as charged, Counts 1, 2, and 3 excluded those specific checks. The State argued the felony information was therefore timely filed because the earliest date of discovery for the offenses in the felony information was after September 5, 2013, when DHS began its investigation, making September 5, 2016 the earliest statute of limitations expiration date for all six counts. The State also argued that discovery of one check or transaction in a continuing-course-of-conduct offense did not mean that all transactions constituting the crime were

---

[11] To the extent this concession by the State and statements made in the ICA opinion, Pitolo, 141 Hawai'i at 142-43, 406 P.3d at 365-66, can be construed to suggest that HPD, not Placencia, was "a person who has a legal duty to represent an aggrieved party and who is oneself not a party to the offense" for purposes of the statute of limitations extension provision of HRS § 701-108(3)(a), we note that HPD is not "a person who has a legal duty to represent an aggrieved party" under the circumstances of this case. See also infra n.15.

discovered, and therefore the full extent of Pitolo's offenses was not discovered until the September 2013 investigation was commenced by DHS. The State also contended the civil complaint did not set the discovery date because it was unclear what transactions the complaint was based upon or what specific acts it alleged, and thus it was unclear what WCO had actually discovered and when. The State alternatively argued that even if the civil complaint established the discovery date, the State's felony information was timely filed.

### c. Circuit Court's Ruling

At the hearing on the motion to dismiss, the circuit court opined that WCO's 2013 civil complaint against Pitolo appeared to cover the same criminal conduct or scheme as was charged in the felony information, and inferred that WCO had sufficient information about Pitolo's crimes to file suit at that time. The circuit court acknowledged that there were two ways to read the word "offense" in HRS § 701-108(3)(a). One reading would mean the limitations period was triggered upon discovery of "the specific crimes that were charged," while a broader reading based on Stan's Contracting would mean the statute of limitations was triggered upon "discovery of the scheme."

On April 25, 2016, the circuit court filed its Findings of Fact, Conclusions of Law, and Order Granting Defendant Laura

10

Pitolo's Motion to Dismiss Felony Information with Prejudice. The circuit court concluded that both WCO and the State were aggrieved parties for purposes of determining a "discovery date" under HRS § 701-108(3)(a).

The circuit court determined all six counts of the felony information were based on conduct that constituted "one criminal scheme," and discovery of the "offense" under HRS § 701-108(3)(a) in this case meant discovery of the criminal scheme. The circuit court ruled that the discovery date of Pitolo's scheme was either May 27, 2010 or no later than August 7, 2010, and the statute of limitations for prosecution of the scheme accordingly expired on either May 27, 2013 or August 7, 2013. The circuit court granted Pitolo's motion to dismiss all counts in the felony information with prejudice.

## C. ICA Ruling

The State appealed to the ICA, generally asserting that the circuit court erred (1) by concluding that the applicable statute of limitations expired on either May 27, 2013 or August 7, 2013, and (2) by concluding Pitolo's alleged conduct constituted a single criminal scheme. Pitolo, 141 Hawaiʻi at 143, 406 P.3d at 366. The ICA held as follows:

> We hold, *inter alia*, that: (1) the State properly
> exercised its prosecutorial discretion in charging Pitolo
> with multiple offenses, even though several of the offenses
> were charged as similar continuing-course-of-conduct crimes
> and the charges overlapped in time; (2) each count of a

> felony information constitutes a separate offense for the purpose of determining "the earliest date of the discovery of the offense" for the purpose of determining the extended statute of limitations pursuant to Hawai['] i Revised Statutes (HRS) § 701-108(3)(a); (3) to the extent that the Circuit Court, in effect, treated all six counts charged against Pitolo as a single "offense" for the purpose of determining "the earliest date of the discovery of the offense" in its application of HRS § 701-108(3)(a), it erred in doing so; and (4) while it is permissible to charge and prove an offense covering any part of the time span of a continuing crime, and the State was free to do so in this case, it is not permissible to disregard discovered conduct that is (a) indisputably part of the continuing course of conduct, as charged, and (b) that occurred within the charged period, in order to avoid the running of the statute of limitations.  We affirm in part, vacate in part, and remand.

141 Hawai'i at 132, 406 P.3d at 355.  Based on these holdings, the ICA affirmed the circuit court's dismissal with prejudice of Counts 1, 2, and 3,[12] but vacated the circuit court's dismissal of Counts 4, 5, and 6.

### III. Standards of Review

**A.    Motion to Dismiss**

This court has stated:

> A trial court's ruling on a motion to dismiss an indictment is reviewed for an abuse of discretion.  The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant.  The burden of establishing abuse of discretion is on appellant, and a strong showing is required to establish it.

State v. Hinton, 120 Hawai'i 265, 273, 204 P.3d 484, 492 (2009) (citations, internal quotation marks, and brackets omitted).

---

[12]    The State did not apply for certiorari to request reinstatement of Counts 1 through 3.  Therefore, we do not address whether those counts were also improperly dismissed by the circuit court.

12

**B.    Conclusions of Law**

Conclusions of law are ordinarily reviewed under the right/wrong standard.  Estate of Klink ex rel. Klink v. State, 113 Hawai'i 332, 351, 152 P.3d 504, 523 (2007).  A conclusion of law that is supported by the trial court's findings of fact and reflects an application of the correct rule of law will not be overturned.  Id.  Additionally, in reviewing a trial court's decision, that court's label of a finding or fact or conclusion of law is not determinative of the standard of review.  Crosby v. State Dep't of Budget & Fin., 76 Hawai'i 332, 340, 876 P.2d 1300, 1308 (1994).

## IV.   Discussion

Pitolo presents two questions on certiorari:

> (1)    Whether the ICA gravely erred in misconstruing [Stan's Contracting], and holding in Counts 4, 5, and 6, that each count constituted a separate offense for the purpose of determining the earliest date of discovery under HRS § 701-108(3)(a) despite the State charging Pitolo with theft by deception from a single complainant, in a continuing course of conduct, by multiple methods, e.g., unauthorized checks, unauthorized debit transactions, and unauthorized ATM withdrawals, occurring simultaneously during overlapping periods of time.

> (2)    Whether the ICA gravely erred in disregarding HRS § 701-108(3)(a) and [Stan's Contracting] in applying its own transaction test to hold that the earliest date of discovery for Counts 4, 5, and 6 required that the individual transactions be discovered by law enforcement for the statute of limitations to be triggered.

We address the questions on certiorari as follows.

**A.     The ICA Correctly Held That Prosecutorial Discretion Allowed Counts 4, 5, and 6 to be Charged as Separate Offenses and That There Are Questions of Fact Regarding the Statute of Limitations Applicable Thereto.**

With respect to the first question on certiorari, in granting the motion to dismiss, the circuit court concluded, "[t]he alleged conduct that serves as the basis for all 6 Counts of the Felony Information filed in the instant case constitute[d] one criminal scheme."  In effect, the circuit court treated Pitolo's alleged conduct as a single continuing-course-of-conduct offense that was discovered at the latest by the August 2010 referral by Placencia of additional checks to HPD.[13]  The circuit court also in effect ruled as a matter of law that Placencia was a "person with a legal duty to represent an aggrieved party [WCO] who is oneself not a party to the offense," placing the March 17, 2015 filing of the charges outside the statute of limitations.

Pitolo argues that the circuit court correctly concluded that Counts 4 through 6 are all a part of one continuing-course-of-conduct offense as a matter of law and that the ICA therefore erred by concluding Counts 4, 5, and 6 were separate offenses, each with an individual discovery date.  Pitolo argues that under Stan's Contracting, Placencia's May 2010 discovery of

---

[13]     See supra n.11.

Pitolo's alleged writing of unauthorized checks constituted discovery of Pitolo's "scheme" to defraud the WCO; that the "scheme" included the conduct charged by the State in Counts 4 through 6; that Placencia was a person who has a legal duty to represent an aggrieved party and was not herself a party to the offense; and that, therefore, Placencia's discovery of the "scheme" in 2010 did not allow HRS § 701-108(3)(a) to extend the statute of limitations until March 17, 2015, as this was more than three years past Placencia's "discovery" of the "scheme" in 2010.

We first clarify the ICA's relevant holdings.  The ICA did not actually hold that Counts 4, 5, and 6 are separate offenses, as argued by Pitolo.  Rather, the ICA correctly held that the State has wide prosecutorial discretion in framing charges, 141 Hawai'i at 140, 406 P.3d at 363, and that "the State properly exercised its prosecutorial discretion in charging Pitolo with multiple offenses, even though several of the offenses were charged as similar continuing-course-of-conduct crimes and the charges overlapped in time," 141 Hawai'i at 132, 406 P.3d at 355.  The ICA also correctly held that "[t]he determination of whether a defendant may be convicted of more than one offense, is based on 'whether the evidence discloses one general intent or discloses separate and distinct intents,' is a question of fact

15

that must be decided by the trier-of-fact after trial[,]" and that, therefore, "the issue of whether the six separate offenses charged against Pitolo merged was not subject to the determination of the Circuit Court on Pitolo's Motion to Dismiss." 141 Hawai'i at 140 n.13, 406 P.3d at 363 n.13.[14]

Relying on HRS § 701-108(3)(a), the State charged Pitolo with first degree theft in Counts 4 and 5 and second degree theft in Count 6, all by deception, and alleged for each count that the earliest discovery of the offense by the State of Hawai'i was after September 5, 2013, the date DHS began its investigation. The State clearly had discretion to charge Counts 4 and 5 as continuing-course-of-conduct offenses, and Count 6 as a separate discrete offense. See State v. Yokota, 143 Hawai'i 200, 206, 426 P.3d 424, 430 (2018) (concluding theft may be charged as a continuing course of conduct).

The ICA also correctly determined that Stan's Contracting did not support Pitolo's position that discovery of "any part of the criminal scheme or plan, necessarily constitutes the

---

[14] Whether a continuing-course-of-conduct offense occurred is a question that should be submitted to the jury, and requires a finding that "the facts demonstrate 'one intention, one general impulse, and one plan.'" State v. Martin, 62 Haw. 364, 368, 616 P.2d 193, 196 (1980) (citation omitted) ("[T]he applicable test in determining whether there is a continuing crime 'is whether the evidence discloses one general intent or discloses separate and distinct intents.'"). Whether a defendant has one general intent or specific intent is a factual question. See HRS § 701-114(b) (requiring the State to prove beyond a reasonable doubt "[t]he state of mind required to establish each element of the offense").

'discovery of the offense' for each and every offense charged, pursuant to the tolling provision in HRS § 701-108(3)(a)." Pitolo, 141 Hawai'i at 139-40, 406 P.3d at 362-63. Stan's Contracting did not hold that discovery of any part of a criminal "scheme" necessarily triggers the statute of limitations on a specific count, as argued by Pitolo.

Thus, the ICA did not err in holding that Stan's Contracting did not require dismissal of the counts in the felony information based on Placencia's 2010 discovery of unauthorized checks allegedly written by Pitolo. For the reasons stated, it was improper for the circuit court to determine on a pre-trial motion to dismiss that Pitolo intended to engage in a single continuing course of conduct, rather than multiple continuing courses of conduct (remaining Counts 4 and 5) and a single, discrete offense (remaining Count 6), as charged by the State. See Yokota, 143 Hawai'i at 206, 426 P.3d at 430 (citations omitted). Therefore, the ICA correctly reinstated Counts 4 through 6.

The ICA correctly ruled that "[e]ach count of the Felony Information constitutes a separate offense for the purpose of determining 'the earliest date of the discovery of the offense,' for the purpose of determining the extended statute of limitations pursuant to HRS § 701-108(3)(a)." Pitolo, 141

17

Hawai'i at 141, 406 P.3d at 364. It follows that the determination of whether the evidence discloses one general intent or discloses separate and distinct intents is a question of fact that must be decided by the jury. Therefore, although the State was free to charge separate offenses, and the ICA correctly reinstated Counts 4 through 6, it will be for the jury to determine whether there was one general intent as to Counts 4 through 6 or separate intents as to one or more of those counts. It will also be for the jury to determine the discovery dates of the "offense" or "offenses" "by an aggrieved party or person with a legal duty to represent an aggrieved party"[15] "who oneself is not a party" to the "offense" or "offenses."

**B. The ICA Erred in Holding the Earliest Date of Discovery for Counts 4, 5, and 6 was September 5, 2013.**

In her second question, Pitolo contends the ICA gravely erred "in applying its own transaction test," to hold "the earliest date of discovery for Counts 4, 5, and 6 required that

---

[15] Although the statute and our legislative history are silent on the meaning of a "person who has a legal duty to represent an aggrieved party," because "the Hawai'i Penal code is substantially derived from the Model Penal Code" we may "look to the Model Penal Code and its commentary for guidance." State v. Aiwohi, 109 Hawai'i 115, 126, 123 P.3d 1210, 1221 (2005), as corrected (Dec. 12, 2005).

Section 1.06(3)(a) of the Model Penal Code ("MPC") is substantially similar to HRS § 701-108(3)(a). Compare MPC § 1.06(3)(a) (1962) with HRS § 701-108(3)(a). The commentary to MPC § 1.06 provides examples of who may have a legal duty to represent an aggrieved party, including "a guardian or trustee." MPC Part I Commentaries, vol. 1, at 91 (1985).

the individual transactions be discovered by law enforcement for the statute of limitations to be triggered."  The ICA stated that the discovery date of the offense by the WCO and/or the State of Hawaiʻi for Counts 4 through 6 was September 5, 2013. Pitolo, 141 Hawaiʻi at 143, 406 P.3d at 366.

The "transaction test" Pitolo refers to is the ICA's determination that if a type of transaction or type of activity, such as the writing of checks to herself, was among those Placencia discovered in May 2010, the State could not further extend the statute of limitations under HRS § 701-108(3)(a) by omitting the checks Placencia had discovered from the offense charged in a count covering the same time period and type of activity.  Pitolo, 141 Hawaiʻi at 142, 406 P.3d at 365. Distinguishing this case from State v. Martin, 62 Haw. 364, 616 P.2d 193 (1980), in which we held a prosecutor has discretion "to prosecute under an indictment covering only part of the entire duration of a continuing offense," the ICA stated:

> While it is permissible to charge and prove the offense covering any part of the time span of a continuing crime, and the State was free to do so in this case, we hold that it is not permissible to disregard discovered conduct that is (1) indisputably part of the continuing course of conduct as charged, and (2) that occurred squarely within the charged period, in order to avoid the running of the statute of limitations.

Pitolo, 141 Hawaiʻi at 142, 406 P.3d at 365.  Based on this reasoning, the ICA held that Counts 1 through 3, which each

could have included checks discovered by Placencia in 2010, were time-barred.[16]  141 Hawaiʻi at 142-43, 406 P.3d at 365-66.

Applying the same reasoning, the ICA held that Counts 4 through 6 did not contain any "discovered-but-omitted" transactions and that these counts are not time-barred because the conduct they encompassed, ATM and debit transactions, as well as Pitolo's single check to Young Ho Sim, were not included in Placencia's report to HPD, Agent Hanagami's affidavit, or admitted by the State.[17]  141 Hawaiʻi at 143, 406 P.3d at 366. The ICA thus held the circuit court "erred in dismissing Counts 4, 5, and 6, based on its erroneous reading of Stan's Contracting and its failure to properly apply HRS § 701-108(3)(a) to the offenses charged in these counts."  Id.

This court has repeatedly confirmed that "timeliness is a factual issue."  State v. Abdon, 137 Hawaiʻi 19, 26, 364 P.3d 917, 924 (2016) (citations omitted).  Section 701-114(e) of the HRS requires that to convict a defendant of an offense, the

---

[16]    Again, the State did not request certiorari review of this holding. See supra n.12.

[17]    WCO's civil complaint against Pitolo, filed July 25, 2013, details the same types of transactions and the same time periods as Counts 1 through 5 of the felony information, but does not appear to include the single check to Young Ho Sim in Count 6.  This suggests that WCO "discovered" Pitolo's conduct some time before DHS began its investigation, and therefore suggests September 5, 2013 was not the earliest discovery date for Counts 4 and 5. However, as explained above, the State was required to prove at trial whether it brought its case against Pitolo within the statute of limitations period, and the ICA erred, as the circuit court did, in determining as a matter of law without factual findings whether the felony information was timely.

20

prosecutor must prove beyond a reasonable doubt "facts establishing that the offense was committed within the time period specified in section 701-108." HRS § 701-114(e) (2014). We have also held that when relying on the extension under HRS § 701-108(3)(a), "the prosecution must not only allege the timely date or dates of the commission of the offense in the indictment, but also the earliest date of the 'discovery of the offense by an aggrieved party or . . . a person who has a legal duty to represent [the] aggrieved party.'" Stan's Contracting, 111 Hawaiʻi at 34, 137 P.3d at 348 (ellipses and brackets in original).

Thus, two facts must be alleged in the charging instrument and proven beyond a reasonable doubt for a conviction of an offense sought in reliance on HRS § 701-108(3)(a): (1) the earliest date of the discovery of the offense by (2) the aggrieved party or a person with a legal duty to represent the aggrieved party. Id. Both facts are essential to determining timeliness under HRS § 701-108(3)(a).

In this case, for purposes of Counts 4 through 6, (1) the earliest date of discovery of the offense or offenses by (2) an "aggrieved party or person with a legal duty to represent an aggrieved party," and (3) whether the State through DHS is such a party, are questions of fact for the jury, and the ICA should

21

have remanded this case to the circuit court without answering those questions.  In addition, as noted earlier, the determination of whether Pitolo had the requisite intent for one single course of conduct encompassing all six charged counts was a question of fact.  Thus, to the extent the ICA ruled on a discovery date of these offenses (or offense) based on discovery by DHS, it erred.

## V. Conclusion

For the foregoing reasons, we affirm the ICA's November 30, 2017 Judgment on Appeal filed pursuant to its October 30, 2017 opinion reinstating Counts 4, 5, and 6 of the March 17, 2015 felony information and remanding this case to the circuit court for further proceedings, but as further clarified by this opinion.

| | |
|---|---|
| John M. Tonaki, Darcia Forester, and Taryn R. Tomasa, for petitioner | /s/   Mark E. Recktenwald |
| | /s/   Paula A. Nakayama |
| | /s/   Sabrina S. McKenna |
| Douglas S. Chin and Michael S. Kagami, for respondent | /s/   Richard W. Pollack |
| | /s/   Michael D. Wilson |