*** FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER ***

**Electronically Filed
Supreme Court
SCWC-16-0000006
05-SEP-2018
08:10 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellant,

vs.

ERIC N. YOKOTA,
Petitioner/Defendant-Appellee.

SCWC-16-0000006

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000006; CR. NO. 15-1-0999)

SEPTEMBER 5, 2018

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY NAKAYAMA, J.

Petitioner/Defendant-Appellee Eric N. Yokota (Yokota) was charged with five counts of forgery and one count of theft for fraudulently cashing five checks from the same bank account over the course of six days in December 2014. The question he presents on certiorari is whether Respondent/Plaintiff-Appellant State of Hawai'i (the State) could simultaneously charge him with

one count of theft as a continuing course of conduct and five individual counts of forgery.

Notwithstanding the five counts of forgery, because the language of our theft statute permits theft to be charged as a continuing course of conduct, we conclude that the Circuit Court of the First Circuit (circuit court) erred in dismissing the theft charge as a matter of law. As the Intermediate Court of Appeals (ICA) concluded the same, we affirm the ICA's July 26, 2017 judgment on appeal.

## I. BACKGROUND

On June 23, 2015, Yokota was charged with several criminal counts stemming from five incidents, occurring over the course of six days, where he allegedly forged and cashed fraudulent checks. Specifically, the State alleged that:

On December 11, 2014, Yokota entered the Pearlridge branch of American Savings Bank (ASB) and presented a teller with an ASB check drawn on the account of Rudolph Kama (Kama). The check was made payable to "Cash" in the amount of $100, which the teller cashed for Yokota.

On December 12, 2014, Yokota entered the Stadium Mall branch of ASB and presented a teller with an ASB check drawn on Kama's account. The check was made payable to "Cash" in the amount of $175, which the teller cashed for Yokota.

On December 13, 2014, Yokota entered the Pearl City

2

branch of ASB and presented a teller with an ASB check drawn on Kama's account. The check was made payable to "Eric Yokota" in the amount of $200, which the teller cashed for Yokota.

On December 15, 2014, Yokota again entered the Pearl City branch of ASB and presented a teller with an ASB check drawn on Kama's account. The check was made payable to "Cash" in the amount of $145, which the teller cashed for Yokota.

Finally, on December 16, 2014, Yokota entered the Salt Lake branch of ASB and presented a teller with an ASB check drawn on Kama's account. The check was made payable to "Cash" in the amount of $100, which the teller cashed for Yokota.

Each check that Yokota had allegedly cashed was less than $300 in value, but in the aggregate, totaled $720.

On January 6, 2015, Kama filed a police report alleging that seven checks were drawn on his personal account without his knowledge or authorization. Kama related that five of the seven forged checks were endorsed by Yokota. Kama further stated that he believed Yokota to be a friend of his deceased son's girlfriend.

Accordingly, Yokota was arrested on June 22, 2015 and charged with eight criminal counts by an amended felony information filed on June 30, 2015. The eight counts were charged as follows:

Counts I-V: Forgery in the Second Degree, in violation

of Hawaiʻi Revised Statutes (HRS) § 708-852,[1] for the five

separate occasions where Yokota

> did, with intent to defraud, falsely utter a forged
> instrument, to wit, [an ASB check] drawn on the account of
> [Kama], made payable to "Cash" in the amount of [$100.00,
> $175.00, $200.00, $145.00, and $100.00], which is or
> purports to be, or which is calculated to become or to
> represent if completed, a commercial instrument, or other
> instrument which does or may evidence, create, transfer,
> terminate, or otherwise affect a legal right, interest,
> obligation, or status . . . .

Count VI: Theft in the Second Degree, in violation of

HRS § 708-831(1)(b),[2] where Yokota "did obtain or exert

unauthorized control over the property of [Kama] and/or [ASB],

the value of which exceeds Three Hundred Dollars ($300.00), by

deception, with intent to deprive [Kama] and/or [ASB] of the

---

[1]     HRS § 708-852 (2014) provides in relevant part:

> **Forgery in the second degree.**   (1) A person commits
> the offense of forgery in the second degree if, with intent
> to defraud, the person falsely makes, completes, endorses,
> or alters a written instrument, or utters a forged
> instrument, . . . which is or purports to be, or which is
> calculated to become or to represent if completed, a deed,
> will, codicil, contract, assignment, commercial instrument,
> or other instrument which does or may evidence, create,
> transfer, terminate, or otherwise affect a legal right,
> interest, obligation, or status.
>      (2) Forgery in the second degree is a class C felony.

[2]     HRS § 708-831 (2014) provided in relevant part:

> **Theft in the second degree.**   (1) A person commits the
> offense of theft in the second degree if the person commits
> theft:
>
> . . . .
>
> (b)   Of property or services the value of which
>       exceeds $300[.]
>
> . . . .
>
> (2) Theft in the second degree is a class C felony.

4

property."

Count VII: Unauthorized Possession of Confidential Personal Information, in violation of HRS § 708-839.55,[3] where Yokota "did intentionally or knowingly possess, without authorization, any confidential personal information of [Kama] in any form . . . ."

Count VIII: Identity Theft in the Second Degree, in violation of HRS § 708-839.7,[4] where Yokota

> did make or cause to be made, either directly or indirectly, a transmission of any personal information of [Kama] by any oral statement, any written statement, or any statement conveyed by electronic means, with the intent to commit the offense of Theft in the Second Degree from [Kama] and/or [ASB] . . . .

---

[3] HRS § 708-839.55 (2014) provides in relevant part:

> **Unauthorized possession of confidential personal information.** (1) A person commits the offense of unauthorized possession of confidential personal information if that person intentionally or knowingly possesses, without authorization, any confidential personal information of another in any form, including but not limited to mail, physical documents, identification cards, or information stored in digital form.
>
> . . . .
>
> (3) Unauthorized possession of confidential information is a class C felony.

[4] HRS § 708-839.7 (2014) provides:

> **Identity theft in the second degree.** (1) A person commits the offense of identity theft in the second degree if that person makes or causes to be made, either directly or indirectly, a transmission of any personal information of another by any oral statement, any written statement, or any statement conveyed by electronic means, with the intent to commit the offense of theft in the second degree from any person or entity.
> (2) Identity theft in the second degree is a class B felony.

## A.    Circuit Court Proceedings: Motion to Dismiss

On August 4, 2015, Yokota filed a motion to dismiss Counts VI (theft in the second degree) and VIII (identity theft in the second degree) in the circuit court.[5]  Yokota argued that under the circumstances in his case, the State could not charge him with theft in the second degree because he did not steal "property or services the value of which exceeds $300" pursuant to HRS § 708-831(1)(b).

First, Yokota noted that no single check, by itself, exceeded the statutory minimum required to charge him for theft in the second degree.

Second, Yokota argued that the State could not aggregate the five separate incidents of theft into one under a continuing course of conduct theory in order to satisfy the $300 threshold amount.  Yokota contended that under State v. Castro, 69 Haw. 633, 653, 756 P.2d 1033, 1047 (1988), "[t]he test to determine whether [a] defendant intended to commit more than one offense in the course of a criminal episode is whether the evidence discloses one general intent or discloses separate and distinct intents."  "If there is but one intention, one general impulse and one plan, there is but one offense."  Id.  Here, Yokota argued, on each day that he forged and cashed a check, he

_____

[5]    The Honorable Dexter D. Del Rosario presided.

allegedly had one impulse (to steal money) and one plan (to pass a stolen check at a bank). The allegations that he had similar impulses on subsequent days are irrelevant and do not prove general intent to steal over $300 such that the State is justified in charging more serious offenses.

Yokota further contended that this court's reasoning in State v. Decoite, 132 Hawaiʻi 436, 323 P.3d 80 (2014), was directly applicable to his case. He noted that in Decoite, this court held that two instances of domestic physical abuse that occurred over a two-year period could not be charged as a continuing course of conduct offense because "physical abuse" was "necessarily discrete and episodic." 132 Hawaiʻi at 438, 323 P.3d at 82. Similar to an incident of domestic violence, Yokota argued that each incident of theft was necessarily discrete in nature, as "[he] enter[ed] the bank, passe[d] the stolen check, [got] the money and the deed [was] done."

The State opposed Yokota's motion to dismiss and argued that the five alleged instances of theft were clearly committed under one scheme or course of conduct, and therefore, aggregation of the value of goods stolen was permitted by statute.[6]

---

[6] Once it is established that a course of conduct exists, HRS § 708-801(6) (2014) explicitly allows theft amounts to be aggregated:

**Valuation of property or services.** Whenever the value of property or services is determinative of the class or grade of an offense, or otherwise relevant to a prosecution, the following shall apply:

. . . .

(6) Amounts involved in thefts committed pursuant to one scheme or course of conduct, whether the property taken be of one person or several persons, may be aggregated in determining the class or grade of the offense.

Applying Castro, the State concluded that Yokota evinced "one general intent," which was "to steal money from [Kama]."

For support, the State explained that Yokota's conduct was more akin to the defendant's conduct in State v. Martin, 62 Haw. 364, 616 P.2d 193 (1980), than Decoite. The State noted that in Martin, this court determined that the defendant engaged in a continuing course of criminal conduct when she filed multiple fraudulent public assistance claims over the course of several years, because the defendant was motivated by a single criminal impulse –- to steal from the State.

The State argued that here, while Yokota did not submit fraudulent statements, "he did submit fraudulently executed checks over the course of time." Just as the defendant in Martin had a continuing intent to defraud the State, the State contended that Yokota "had the continuing intent to defraud Mr. Kama and he did so by continually submitting identical fraudulent checks." Thus, just as this court concluded in Martin, the State concluded that Yokota's acts constituted a continuing course of criminal conduct. As such, the State requested that the circuit court deny Yokota's motion to dismiss.

After holding a hearing on Yokota's motion to dismiss, the circuit court orally granted Yokota's motion and dismissed Counts VI and VIII with prejudice. Specifically, the circuit court stated, "the Court is in agreement with the defense's

8

position, that the State is not permitted to aggregate the amount in determining the grade of the offense, that each of these are separate. So the Court will grant the motion and dismiss Counts 6 and 8." Yokota then pleaded no contest to the remaining counts against him, and the circuit court found him guilty of the five counts of forgery (Counts I to V) and the one count of unauthorized possession of confidential personal information (Count VII).

On December 8, 2015, the circuit court entered a written order granting Yokota's motion to dismiss Counts VI and VIII of the amended felony information with prejudice.

## B.   ICA Proceedings

On January 6, 2016, the State filed a notice of appeal. In its opening brief, the State alleged that "[t]he circuit court erred by concluding the State was barred as a matter of law from charging Yokota's theft by passing 5 fraudulently executed checks over the course of 6 days as one scheme or course of conduct." Specifically, the State argued that the plain language of HRS § 708-801(6) allowed the State "to aggregate amounts obtained during individual instances of obtaining money from another by deception, even if the victim [was] not the same person in each individual instance." The State further contended that "the question of whether the individual forgeries were continuous conduct should be submitted to the trier of fact, and it was

9

err[or] for the circuit court to conclude that prosecution as continuous conduct was precluded as a matter of law."

In response, Yokota argued that the circuit court correctly concluded that the individual forgeries could not be charged as theft under a continuing course of conduct theory. He stated that "[t]he State recognized the transitory, brief, and episodic nature of each act of uttering a forged instrument when it charged [him] with five separate counts of [forgery]." Therefore, Yokota concluded, because his conduct was "'necessarily discrete and episodic,' the circuit court did not err when it concluded that the thefts that resulted from each count of forgery could not be aggregated."

In a summary disposition order filed on June 23, 2017, the ICA agreed with the State and concluded that "the Circuit Court erred in dismissing Counts VI and VIII on the basis that they could not be charged as continuing courses of conduct." Based on the test this court articulated in Decoite and Martin, the ICA concluded that the "statutory and case law illustrate[d] a legislative intent to allow the treatment of theft crimes as continuing courses of conduct."

Accordingly, the ICA vacated the circuit court's order granting Yokota's motion to dismiss Counts VI and VIII and remanded the case to the circuit court for further proceedings consistent with the summary disposition order. On July 26, 2017,

10

the ICA filed its judgment on appeal.

Yokota filed an application for writ of certiorari.

## II.   STANDARDS OF REVIEW

### A.   Conclusions of Law

Conclusions of law are reviewed de novo under the right/wrong standard.  Decoite, 132 Hawaiʻi at 437, 323 P.3d at 81.

### B.   Statutory Interpretation

The interpretation of a statute is a question of law reviewable de novo.  State v. Arceo, 84 Hawaiʻi 1, 10, 928 P.2d 843, 852 (1996).

When interpreting our statutory scheme, we abide by several established rules of statutory construction:

> First, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is obtained primarily from the language contained in the statute[s] themselves.  Second, [l]aws in pari materia, or upon the same subject matter, shall be construed with reference to each other.  What is clear in one statute may be called in aid to explain what is doubtful in another. And, third, [t]he legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction[,] and illogicality.

Id. at 19, 928 P.2d at 861 (alterations in original) (citations and quotations omitted).

## III.   DISCUSSION

Yokota presents one question for this court's review: "[w]hether the ICA gravely erred in concluding that the State was

11

not barred from charging Yokota with [theft in the second degree] for passing five fraudulently executed checks amounting to $720 over the course of six days as a continuing course of conduct."[7] Specifically, Yokota alleges that when the State decided to charge him with five separate counts of forgery, it "recognized the transitory, brief, and episodic nature of each act," and could not simultaneously charge him with theft under a continuing course of conduct theory. For the reasons stated below, we reject Yokota's argument and hold that theft can be charged as a continuing course of conduct, notwithstanding a decision to charge individual counts of forgery.

### A. Generally, theft may be charged as a continuing course of conduct.

HRS § 701-108(4) (2014) provides that "[a]n offense is committed when every element occurs, or, if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct or the defendant's complicity therein is terminated." In Decoite, we stated that "[t]he test to determine whether a crime may be charged on a continuous conduct theory is whether the language, structure, and purpose of

---

[7] While Yokota does not argue on certiorari that the ICA erred in also reinstating Count VIII (identity theft in the second degree), our decision on whether the State could charge Yokota with theft in the second degree directly affects the validity of the identity theft in the second degree charge. A person can only be charged with identity theft in the second degree if that person makes or causes to be made a transmission of any personal information of another, "with the intent to commit the offense of theft in the second degree from any person or entity." HRS § 708-839.7 (2014) (emphasis added).

the statute reveals a legislative intent to criminalize continuing conduct."  132 Hawaiʻi at 438, 323 P.3d at 82.

The language of the theft statute indicates that theft may be charged on a continuing conduct theory.  The theft statute provides that a person commits theft if the person "obtains, or exerts control over, the property of another by deception with intent to deprive the other of the property."  HRS § 708-830(2) (2014).  Similarly, a person commits theft in the second degree "if the person commits theft . . . [o]f property or services the value of which exceeds $300."  HRS § 708-831(1)(b).[8]

Here, the Legislature's decision to define theft as obtaining or exerting control over "property or services," see HRS §§ 708-830.5(1)(a), 708-831(1)(b), 708-832(1)(a), 708-833(1), and not "a piece of property or a service," indicates that the Legislature did not necessarily intend that theft be charged individually.  Furthermore, HRS § 708-801(6) provides that "[a]mounts involved in thefts committed pursuant to one scheme or course of conduct, whether the property taken be of one person or several persons, may be aggregated in determining the class or grade of the offense."  This indicates that the Legislature explicitly considered that theft could be charged on a continuing

---

[8]     For purposes of HRS § 708-831(1)(b), "property" is defined as "any money, personal property, real property, thing in action, evidence of debt or contract, or article of value of any kind."  HRS § 708-800 (2014).

course of conduct theory.

The plain language of the statute is further supported by case law affirming convictions of guilt for theft as a continuing course of conduct. For example, in Martin, the defendant, over the course of four years, filed multiple fraudulent public assistance forms. 62 Haw. at 366, 616 P.2d at 195-96. This court held that because "all statements were identical, representing that defendant was unmarried, unemployed, and not receiving social security benefits," there was "but one intention and plan here" -- to commit theft on the State -- "and thus . . . one offense." Id. at 369, 616 P.2d at 197. Accordingly, we affirmed the defendant's conviction of theft under a continuous offense theory. Id. at 366, 616 P.2d at 195.

Similarly, in State v. Stenger, 122 Hawaiʻi 271, 279, 226 P.3d 441, 449 (2010), this court affirmed a jury verdict finding the defendant guilty of theft when the defendant failed to disclose for several months that she no longer qualified for public assistance. We concluded in Stenger that the defendant's theft by deception constituted a continuous offense, because "based on [the State's] presentation of the case, [the defendant] acted under 'one general impulse,' and had 'but one intention and plan,' to unlawfully procure public assistance from the government through a 'series of acts.'" Id. at 289, 226 P.3d at

14

459 (citations omitted).

The plain language of the theft statute and our prior case law lead us to conclude that the State may charge theft on a continuing conduct theory. The circuit court erred in concluding that the State could not do so as a matter of law. Additionally, we reiterate that whether a continuing course of conduct offense occurred is a question that should be submitted to the jury. See State v. Matias, 102 Hawaiʻi 300, 305, 75 P.3d 1191, 1196 (2003) ("The test to determine whether the defendant intended to commit more than one offense is whether the evidence discloses one general intent or discloses separate and distinct intents. . . . All factual issues involved in this determination must be decided by the trier of fact." (emphasis in original)); see also People v. Daghita, 92 N.Y.S.2d 799, 802 (N.Y. App. Div. 1949) ("What is 'separate', what is 'single', . . . are all jury questions both by legal tradition and by necessity. . . . The question of whether the takings were separate or united in purpose was carefully and fairly submitted to the jury as a question of fact[.]").

Accordingly, the ICA correctly concluded that the circuit court erred in determining that the State was barred, as a matter of law, from charging theft as a continuing course of conduct.

15

**B.   The State could charge Yokota with theft on a continuing course of conduct theory while simultaneously charging him with individual counts of forgery**.

Yokota does not appear to dispute the foregoing general principles.  Instead, he challenges the State's decision to charge him with theft as a continuing course of conduct when it simultaneously charged him with five separate counts of forgery.  Yokota argues that when the State decided to charge him with five counts of forgery, it necessarily determined that his conduct was transitory, brief, and episodic.  Yokota concludes that because conduct that is "necessarily discrete and episodic" cannot be continuous, the State could not charge him with theft under a continuing course of conduct theory.  The ICA did not address this aspect of Yokota's argument on appeal.  However, we conclude that Yokota's argument fails for two reasons.

First, we have consistently stated that the State has wide discretion in bringing criminal charges.  <u>Decoite</u>, 132 Hawaiʻi at 442, 323 P.3d at 86 (Pollack, J., dissenting) (citing <u>United States v. Batchelder</u>, 442 U.S. 114, 124 (1979)); <u>see also</u> <u>State v. Lagat</u>, 97 Hawaiʻi 492, 499, 40 P.3d 894, 901 (2002) ("[T]he matter [on whether to bring a charge under one statute or another] is necessarily and traditionally in the discretion of the prosecuting attorney.").  Yokota does not provide any reason why the State abused its discretion here.

16

Second, while the Legislature placed limitations on the possibility of multiple convictions arising from the same conduct, it did not similarly limit the State's ability to charge multiple offenses arising from the same conduct. HRS § 701-109(1) (2014) provides:

> (1) When the same conduct of a defendant may establish an element of one or more offense, <u>the defendant may be prosecuted for each offense of which such conduct is an element</u>. The defendant may not, however, be convicted of more than one offense if:
>
> . . . .
>
> (e)   The offense is defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific periods of conduct constitute separate offenses.

(emphasis added). In other words, the Legislature explicitly provided that a defendant may be <u>charged</u> with multiple offenses arising from the same conduct even when he or she cannot be <u>convicted</u> of more than one offense. HRS § 701-109(1). Therefore, while two offenses might eventually merge to "limit the possibility of multiple convictions . . . when the defendant has basically engaged in only one course of criminal conduct directed at one criminal goal," <u>see</u> HRS § 701-109 cmt. (2014), the State may still prosecute each offense individually. <u>Accord</u> <u>State v. Padilla</u>, 114 Hawaiʻi 507, 517, 164 P.3d 765, 775 (App. 2007). Accordingly, here, the State could charge individual counts of forgery and a single count of theft, even if HRS § 701-109(1)(e) might prohibit Yokota from being convicted of both

offenses.[9]

Yokota does not offer any reason why the State exceeded the bounds of its discretion by charging him with theft as a continuing course of conduct and individual counts of forgery. Because the plain language of the theft statute allows theft to be charged as a continuing course of conduct, the circuit court erred in dismissing Yokota's theft in the second degree charge as a matter of law. Instead, we agree with the State that "the question of whether the individual forgeries were continuous conduct should be submitted to the trier of fact." See Matias, 102 Hawaiʻi at 305, 75 P.3d at 1196.

## IV. CONCLUSION

The State may charge defendants with theft on a continuing course of conduct theory. This is permissible even when the State also decides to simultaneously charge individual counts of forgery. Therefore, the ICA did not err in vacating the circuit court's "Order Granting Motion to Dismiss Counts VI

---

[9]     We also note that the State was not barred from charging forgery as a continuing course of conduct as a matter of law. As previously noted, HRS § 701-109(1)(e) provides that a defendant may not be convicted of more than one offense if "[t]he offense is defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific periods of conduct constitute separate offenses." (Emphasis added.)
    Here, HRS § 708-852, forgery in the second degree, does not explicitly state that specific acts of forgery shall constitute separate offenses. This indicates that the State is not barred, as a matter of law, from charging forgery as a continuing offense. Cf. Arceo, 84 Hawaiʻi at 19-20, 928 P.2d at 861-62 (precluding sexual assault from being charged as a continuing offense because the definition of "sexual penetration" explicitly provided that "each act of sexual penetration shall constitute a separate offense").

and VIII of the Amended Felony Information with Prejudice" and remanding the case for further proceedings.[10]

Accordingly, we affirm the ICA's July 26, 2017 judgment on appeal.

| | |
|---|---|
| Christian G. Enright (William H. Jameson, Jr. with him on the briefs) for petitioner/defendant-appellee | /s/ Mark E. Recktenwald<br>/s/ Paula A. Nakayama<br>/s/ Sabrina S. McKenna |
| Brian R. Vincent for respondent/plaintiff-appellant | /s/ Richard W. Pollack<br>/s/ Michael D. Wilson |



---

[10]     While not addressed by the parties on certiorari, after the theft charges were dismissed, Yokota subsequently pleaded no contest to the five counts of forgery and the one count of unauthorized possession of confidential personal information.  The circuit court found him guilty of those six charges.

Because we affirm the ICA's decision to vacate the circuit court's dismissal of the theft charges, on remand, the circuit court should carefully consider any motion to withdraw pleas.  See State v. Gomes, 79 Hawaiʻi 32, 36-37, 897 P.2d 959, 963-64 (1995).  The circuit court should also consider the applicability of merger pursuant to HRS § 701-109(1)(e).  See Matias, 102 Hawaiʻi at 305-06, 75 P.3d at 1196-97.