**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000599
15-MAY-2020
07:50 AM**

NO. CAAP-18-0000599

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I,
Plaintiff-Appellee,
v.
SUSAN E. SHAW,
Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 1CPC-17-0001118)

MEMORANDUM OPINION
(By:  Ginoza, Chief Judge, Chan and Wadsworth, JJ.)

Defendant-Appellant Susan E. Shaw (Shaw) appeals from the Judgment of Conviction and Sentence (Judgment), entered on July 11, 2018, in the Circuit Court of the First Circuit (circuit court).[1]  Plaintiff-Appellee State of Hawai'i (State) charged Shaw by indictment with one count of Computer Fraud in the Third Degree (Computer Fraud 3), in violation of Hawaii Revised Statutes (HRS) § 708-891.6 (2014),[2] and one count of Fraudulent

---

[1]    The Honorable Fa'auuga L. To'oto'o presided.

[2]    HRS § 708-891.6 provides:

**[§708-891.6]  Computer fraud in the third degree.**  (1) A person commits the offense of computer fraud in the third degree if the person knowingly accesses a computer, computer system, or computer network with the intent to commit the offense of theft in the third or fourth degree.

Use of a Credit Card (Credit Card Fraud), in violation of HRS § 708-8100(1)(c) (2014).[3]  The Judgment reflects that Shaw was ultimately convicted of both counts as charged.

As explained below, we conclude that the plain language of HRS § 708-8100(2) does not allow the offense of Credit Card Fraud to be prosecuted as a class C felony based on an aggregation of the values of multiple transactions involving more than one credit card or credit card number.  Shaw's conviction for Credit Card Fraud in Count II must therefore be vacated and

---

(2) Computer fraud in the third degree is a class C felony.

The offense of Theft in the Third Degree (Theft 3) is defined by HRS § 708-832 (Supp. 2016), which provides, in relevant part:

§708-832  **Theft in the third degree**.  (1) A person commits the offense of theft in the third degree if the person commits theft:

(a)    Of property or services the value of which exceeds $250[.]

HRS § 708-830 (2014) provides, in relevant part: "A person commits theft if the person . . . : (1) Obtains or exerts unauthorized control over property.  A person obtains or exerts unauthorized control over the property of another with intent to deprive the other of the property."

[3]    HRS § 708-8100 provides, in relevant part:

§708-8100  **Fraudulent use of a credit card**.  (1) A person commits the offense of fraudulent use of a credit card, if with intent to defraud the issuer, or another person or organization providing money, goods, services, or anything else of value, or any other person, the person:

. . .

(c)    Uses or attempts or conspires to use a credit card number without the consent of the cardholder for the purpose of obtaining money, goods, services, or anything else of value.

(2) Fraudulent use of a credit card is a class C felony if the value of all money, goods, services, and other things of value obtained or attempted to be obtained exceeds $300 in any six-month period.  For purposes of this section, each separate use of a credit card that exceeds $300 constitutes a separate offense.

(3) Fraudulent use of a credit card is a misdemeanor, if the value of all money, goods, services, and other things of value obtained or attempted to be obtained does not exceed $300 in any six-month period.

the circuit court erred in failing to dismiss Count II for lack of sufficient evidence to establish probable cause.  We further conclude that, under the post-conviction liberal construction standard, the Indictment sufficiently charged Shaw in Count I with Computer Fraud 3 based on an aggregation of the values of multiple transactions involving multiple credit cards, even without expressly alleging that Shaw engaged in a scheme or course of conduct.  However, the circuit court erred in failing to submit to the jury the factual question of whether the evidence disclosed one general intent or separate and distinct intents.  Accordingly, this case must be remanded for a new trial on Count I.

## I.  BACKGROUND

### A.  Charges

The charges arise from allegations that, over the course of four months between January 16, 2017, through and including May 18, 2017, Shaw falsely inflated the tip amounts of 105 customers' bills at Square Barrels, the restaurant where Shaw worked as a server.[4]  Over the course of the four months, Shaw was alleged to have falsely inflated tips totaling over $700.

On August 15, 2017, the State charged Shaw by Indictment, as follows:

> COUNT I: On or about January 16, 2017, through and including May 18, 2017, in the City and County of Honolulu, State of Hawaii, Susan E. Shaw, did knowingly access a computer, computer system, or computer network with the intent to commit the offense of theft in the third degree, thereby committing the offense of Computer Fraud in the Third Degree in violation of Section 708-891.6 of the Hawaii Revised Statutes.
>
> A person commits the offense of theft in the third degree if she intentionally obtains and exerts unauthorized control over property of another, the value of which exceeds Two Hundred and Fifty Dollars ($250.00), with intent to deprive the other of property valued in excess of Two Hundred and Fifty Dollars ($250.00).  Sections 708-832(1)(a) and 708-830(1) of the Hawaii Revised Statutes.  (HPD Report Number 17189819-002).  Count I relates to the access and use

---

[4]    The terms "server" and "waitress" are used interchangeably to reflect their usage during the proceedings.

of a computer, to wit a "point of sale computer terminal", with intent [to] commit theft of money valued in excess of $250.00, and the defendant did, in fact, so obtain money valued in excess of $250.00.

COUNT II: On or about January 16, 2017, through and including May 18, 2017, in the City and County of Honolulu, State of Hawaii, Susan E. Shaw, with intent to defraud the issuer, or another person or organization providing money, services, or anything of value, or any other person, did use credit card numbers without the consent of the cardholders for [the] purpose of obtaining money, or anything else of value, and the value of all money and other things of value so obtained exceeded Three Hundred Dollars ($300.00) in any six-month period, thereby committing the offense of Fraudulent Use of Credit Card, in violation of Sections 708-8100(1)(c) of the Hawaii Revised Statutes.  (HPD Report Number 17-189819-003).  Count II relates to the use of credit card numbers, without the cardholders' consent, for the purpose of obtaining money valued in excess of $300.00 during the time period specified herein, a period of less than six months, and the defendant did, in fact, so obtain money valued in excess of $300.00.

## B.    Pre-Trial Motion to Dismiss

On November 3, 2017, Shaw filed "Defendant's Motion to Dismiss with Prejudice" (Motion to Dismiss), arguing that the State failed to adduce sufficient evidence to establish probable cause for either of the two counts at the grand jury proceedings. As to Count I, the Computer Fraud 3 charge, Shaw argued that the State failed to adduce sufficient evidence: (1) that Shaw used a computer to steal more than $250 from a single victim; (2) that the device Shaw used to process the tips was a "computer," as defined by HRS § 708-890 (2014); and (3) that Shaw lacked authorization.  As to Count II, the Credit Card Fraud charge, Shaw argued that the State failed to adduce sufficient evidence: (1) that Shaw used a single credit card number without the cardholder's consent to defraud the bank that issued the card of more than $300; and (2) establishing lack of consent from the cardholders.  Shaw also argued that the State failed to adduce evidence that Shaw acted pursuant to a single scheme or course of conduct.  As the basis for these arguments, Shaw argued that Computer Fraud 3 could only be prosecuted based on a single victim of theft and Credit Card Fraud could only be prosecuted

4

based on the use of a single credit card or credit card number and a single credit card victim.

The circuit court held a hearing on November 22, 2017, at which it orally denied the motion, finding that "there was overwhelming evidence to support the indictment against the defendant based on [witness testimony] and the exhibits presented to the grand jury." The circuit court subsequently filed its written Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion to Dismiss with Prejudice on December 15, 2017.

## C.   Trial

At trial, the State called three witnesses: Anastasia Bryant (Bryant)[5], Chris Duque (Duque), and Thomas Ray (Ray). Bryant testified that she was a customer at Square Barrels on May 9, 2017. She identified Shaw as her server. After discovering that the credit card she used to pay for her bill was charged $10 more than the amount she had written on her copy of the receipt, Bryant reported the discrepancy to Square Barrels management. Duque was an investigator with the Honolulu Prosecutor's office who testified as an expert in the areas of computer forensics as well as computer identification and examination. Duque testified about his examination of the restaurant's computer system and network as part of the State's investigation into this case. Ray was the co-owner of Square Barrels. Ray testified about Shaw's employment and the nature of the restaurant's operations. Ray also testified about the internal audit he and his business partner conducted of every employee's server accountability reports, spurred by Bryant's report of the discrepancy with her transaction.

Shaw was the only witness for the defense.

The circuit court's instructions to the jury included, *inter alia*, instructions on the elements of Computer Fraud 3 and

---

[5]     Bryant was formerly known as Anastasia Vidinha.

Credit Card Fraud, and an instruction on the definition of an "inference" and its use with regard to determining lack of consent.

The jury found Shaw guilty as charged in both counts. At the sentencing hearing, the State asserted that the two counts merged and, as such, requested that the circuit court only proceed in sentencing on the count for Computer Fraud 3 and take no further action on the count for Credit Card Fraud.  Defense counsel agreed that the two counts merged.  Despite both parties conceding that the two counts merged, neither party requested a dismissal of Count II, nor did the circuit court enter such an order.

The circuit court entered its Judgment on July 11, 2018.  The Judgment provided:

> DEFENDANT IS CONVICTED AND FOUND GUILTY OF:
>
> CT. 1: COMPUTER FRAUD IN THE THIRD DEGREE
> CT. 2: FRAUDULENT USE OF CREDIT CARD
>
> **FINAL JUDGMENT AND SENTENCE OF THE COURT:**
>
> COUNT 1: IMPRISONMENT TERM OF FIVE (5) YEARS to run concurrent with any other term now serving; Mittimus to issue forthwith;
> MONETARY ASSESSMENT OF $500.00 OR THE ACTUAL COST OF THE DNA ANALYSIS, WHICHEVER IS LESS TO THE DNA REGISTRY SPECIAL FUND;
> PROVIDE BUCCAL SWAB SAMPLES AND PRINT IMPRESSIONS OF EACH HAND, AND IF REQUIRED BY THE COLLECTING AGENCY'S RULES OR INTERNAL REGULATIONS BLOOD SPECIMENS REQUIRED FOR LAW ENFORCEMENT IDENTIFICATION ANALYSIS.
>
> COUNT 2: STATE REQUESTED TO TAKE NO FURTHER ACTION; GRANTED BY THE COURT.

## II.  POINTS OF ERROR

On appeal, Shaw raises six points of error: (1) the Indictment was fatally defective for failing to allege that Shaw acted pursuant to a scheme or continuing course of conduct; (2) the circuit court erred in denying Shaw's Motion to Dismiss with Prejudice; (3) the circuit court failed to properly instruct the jury; (4) there was insufficient evidence to sustain Shaw's convictions; (5) the circuit court erred in admitting unsworn

6

hearsay evidence; and (6) the circuit court's evidentiary errors individually and cumulatively violated Shaw's rights to due process and a fair trial.

### III.  STANDARDS OF REVIEW

**A.   Sufficiency of the Indictment**

"Whether a charge sets forth all the essential elements of a charged offense . . . is a question of law, which we review under the de novo, or right/wrong, standard."  State v. Mita, 124 Hawaiʻi 385, 389, 245 P.3d 458, 462 (2010) (citation, internal quotation marks, and brackets omitted).

**B.   Motion to Dismiss Indictment**

We review de novo a circuit court's order denying a motion to dismiss an indictment based on sufficiency of the evidence to support the indictment.  State v. Taylor, 126 Hawaiʻi 205, 215, 269 P.3d 740, 750 (2011).

> In reviewing the sufficiency of the evidence to establish probable cause before the grand jury, every legitimate inference that may be drawn from the evidence must be drawn in favor of the indictment and neither the trial court nor the appellate court on review may substitute its judgment as to the weight of the evidence for that of the Grand Jury. The evidence to support an indictment need not be sufficient to support a conviction.

Id. (quoting State v. Ganal, 81 Hawaiʻi 358, 367, 917 P.2d 370, 379 (1996)).

**C.   Jury Instructions**

When jury instructions are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading.  State v. Metcalfe, 129 Hawaiʻi 206, 222, 297 P.3d 1062, 1078 (2013) (citation omitted). "Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial."  Id. (citation omitted); see also State v. Nichols, 111 Hawaiʻi 327, 337, 141 P.3d 974, 984 (2006) ("[O]nce instructional error is

demonstrated, we will vacate, without regard to whether timely objection was made, if there is a reasonable possibility that the error contributed to the defendant's conviction[.]").

## D.   Sufficiency of Evidence

In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the State. State v. Ildefonso, 72 Haw. 573, 576, 827 P.2d 648, 651 (1992). "The test on appeal is not whether guilt [was] established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact."  State v. Eastman, 81 Hawaiʻi 131, 135, 913 P.2d 57, 61 (1996).  "'Substantial evidence' . . . is credible evidence which is of sufficient quality and probative value to enable a man of reasonable caution to reach a conclusion."  State v. Naeole, 62 Haw. 563, 565, 617 P.2d 820, 823 (1980).

## E.   Admissibility of Evidence

> [D]ifferent standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue.  When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard.  However, the traditional abuse of discretion standard should be applied in the case of those rules of evidence that require a "judgment call" on the part of the trial court.

Kealoha v. Cty. of Hawaii, 74 Haw. 308, 319, 844 P.2d 670, 676 (1993).

## IV.   DISCUSSION

## A.   Sufficiency of the Indictment

Shaw argues that, where the Computer Fraud 3 and Credit Card Fraud charges were based on an aggregation of multiple transactions pursuant to HRS § 708-801(6),[6] the State was required to allege in the Indictment that Shaw intentionally

---

[6]     HRS § 708-801(6) (2014) provides, in relevant part: "Amounts involved in thefts committed pursuant to one scheme or course of conduct, whether the property taken be of one person or several persons, may be aggregated in determining the class or grade of the offense."  (Emphasis added.)

engaged in a scheme or criminal course of conduct to commit theft and credit card fraud.  Shaw contends that a scheme or course of conduct was an essential fact or required element of the charges and its inclusion in the Indictment was required to provide Shaw with adequate notice and to fully inform Shaw of the nature and cause of the charges brought against her.  Thus, Shaw argues that the failure to allege a scheme or course of conduct caused the Indictment to be fatally defective.  Shaw argues that the State's aggregation of 105 separate credit card transactions and failure to allege a scheme or course of conduct violated her right to due process, as it relieved the State of its burden to call 105 witnesses and deprived Shaw of her right to confront the 105 witnesses.

Shaw concedes that she challenges the sufficiency of the Indictment for the first time on appeal.  As such, we apply the Motta[7]/Wells[8] post-conviction liberal construction rule:

> Under the Motta/Wells post-conviction liberal construction rule, we liberally construe charges challenged for the first time on appeal.  Under this approach, there is a presumption of validity for charges challenged subsequent to a conviction.  In those circumstances, this court will not reverse a conviction based upon a defective indictment or complaint unless the defendant can show prejudice or that the indictment or complaint cannot within reason be construed to charge a crime.

State v. Wheeler, 121 Hawaiʻi 383, 399-400, 219 P.3d 1170, 1186-87 (2009) (citations, internal quotation marks, and brackets omitted).

1.    **Count I (Computer Fraud 3) was legally sufficient under the Motta/Wells Rule.**

We first look at whether Count I can be reasonably construed to charge the offense of Computer Fraud 3.  "A complaint, for example, cannot reasonably be construed to charge an offense if it omits an element of the offense or when the

---

[7]    State v. Motta, 66 Haw. 89, 657 P.2d 1019 (1983).

[8]    State v. Wells, 78 Hawaiʻi 373, 894 P.2d 70 (1995).

common definition of an element of an offense set forth in the charge does not comport with its statutory definition." State v. Baker, No. SCWC-18-0000454, 2020 WL 1228443, at *7 (Haw. Mar. 13, 2020) (citing State v. Pacquing, 139 Hawaiʻi 302, 308, 389 P.3d 897, 903 (2016), and Wheeler, 121 Hawaiʻi at 394, 219 P.3d at 1181). The supreme court has recognized that "one 'way in which an otherwise deficient count can be reasonably construed to charge a crime is by examination of the charge as a whole.'" State v. Tominiko, 126 Hawaiʻi 68, 76, 266 P.3d 1122, 1130 (2011) (quoting State v. Elliott, 77 Hawaiʻi 309, 312, 884 P.2d 372, 375 (1994)). "Under the liberal construction standard, two counts can be read together." Id.

For Count I, the charge tracked the language of the statute for Computer Fraud 3, HRS § 708-891.6. The charge also included the statutory language for the underlying predicate offense of Theft 3 from HRS § 708-832. Thus, on the basis that all elements of the charge as defined by the respective statutes are alleged in the Indictment, the charge for Computer Fraud 3 is not defective. See State v. Treat, 67 Haw. 119, 120, 680 P.2d 250, 251 (1984) (holding that a theft in the first degree charge was not defective where it tracked the statutory definition of the offense because the charge alleged all of the statutory elements of the offense).

Shaw challenges the State's reliance on HRS § 708-801(6) to aggregate multiple instances of theft in charging Shaw with Computer Fraud 3 and argues that even if the State's reliance on HRS § 708-801(6) was proper, the State was required to expressly allege that Shaw acted pursuant to a scheme or course of conduct.

In State v. Yokota, 143 Hawaiʻi 200, 205-06, 426 P.3d 424, 429-30 (2018), the Hawaiʻi Supreme Court held that theft can be charged as a continuing course of conduct and that the alleged instances of theft can be aggregated under HRS § 708-801(6). In that case, the circuit court dismissed the counts charging Yokota

with Theft in the Second Degree and Identity Theft in the Second Degree.[9]  Id. at 204, 426 P.3d at 428.  Notably, the charges did not include any express allegation of a scheme or course of conduct.  Nonetheless, the supreme court held that the circuit court erred in determining that the State was barred from charging theft as a continuing course of conduct and ultimately affirmed this court's decision to vacate the circuit court's order dismissing the Theft in the Second Degree and Identity Theft in the Second Degree counts.  Id. at 206-07, 426 P.3d at 430-31.  The supreme court noted:

> While Yokota does not argue on certiorari that the [Intermediate Court of Appeals] erred in also reinstating Count VIII (identity theft in the second degree), our decision on whether the State could charge Yokota with theft in the second degree directly affects the validity of the identity theft in the second degree charge.  A person can only be charged with identity theft in the second degree if that person makes or causes to be made a transmission of any personal information of another, "with the intent to commit the offense of theft in the second degree from any person or entity."  HRS § 708-839.7 (2014) (emphasis added).

Id. at 205 n.7, 426 P.3d at 429 n.7.

In Count I, Shaw was charged with Computer Fraud 3, which requires an allegation that the charged individual "knowingly accesse[d] a computer, computer system, or computer

---

[9]     The relevant charges were:

Count VI: Theft in the Second Degree, in violation of HRS § 708-831(1)(b), where Yokota "did obtain or exert unauthorized control over the property of [Kama] and/or [ASB], the value of which exceeds Three Hundred Dollars ($300.00), by deception, with intent to deprive [Kama] and/or [ASB] of the property."

. . . .

Count VIII: Identity Theft in the Second Degree, in violation of HRS § 708-839.7, where Yokota

did make or cause to be made, either directly or indirectly, a transmission of any personal information of [Kama] by any oral statement, any written statement, or any statement conveyed by electronic means, with the intent to commit the offense of Theft in the Second Degree from [Kama] and/or [ASB] . . . .

Id. at 202-03, 426 P.3d at 426-27 (footnotes omitted).

network with the <u>intent to commit the offense of theft in the third or fourth degree</u>."  HRS § 708-891.6 (emphasis added).  Thus, because Computer Fraud 3 is predicated on theft in the third or fourth degree, it follows that Computer Fraud 3 may also be charged as a continuing course of conduct.  <u>Cf.</u> <u>Yokota</u>, 143 Hawaiʻi at 205 n.7, 426 P.3d at 429 n.7.  We therefore conclude that the State was not barred from aggregating multiple alleged instances of theft in charging Shaw with Computer Fraud 3.  We further conclude that, under the <u>Motta</u>/<u>Wells</u> rule, it was not necessary to expressly allege in the Indictment that Shaw engaged in a scheme or course of conduct.  <u>See</u> <u>id.</u> at 202-03, 426 P.3d at 426-27.

Regardless, it is clear from reading the Indictment as a whole that the State charged Shaw with Computer Fraud 3 on a continuing course of conduct theory.  Count I alleged that "[o]n or about January 16, 2017, through and including May 18, 2017," Shaw "did knowingly access a computer, computer system, or computer network with the intent to commit the offense of theft in the third degree" and that "[a] person commits the offense of theft in the third degree if she intentionally obtains and exerts unauthorized control over property of another, the value of which exceeds Two Hundred and Fifty Dollars ($250.00), with intent to deprive the other of property valued in excess of Two Hundred and Fifty Dollars ($250.00)."  Count II identified the same four-month time period as Count I and alleged that Shaw "did use credit card numbers without the consent of the cardholders . . . ."  It can be reasonably inferred, due to the references to the same time period, that both charges are based on the same underlying conduct.  Although Count I did not expressly allege that the conduct involved multiple victims and instances of theft, when read in conjunction with Count II, the charge is sufficient.  <u>See</u> <u>Tominiko</u>, 126 Hawaiʻi at 76, 266 P.3d at 1130 (holding that, under the liberal construction standard, a charge for Operating a Vehicle Under the Influence (OVUII) was not

12

insufficient for failing to allege that the conduct occurred on a public roadway where a separate count contained the necessary allegation and both counts refer to operating a motor vehicle on the same day in Honolulu, Hawaiʻi).  The Indictment, when read as a whole, apprised Shaw that she was being charged for multiple thefts involving multiple credit card transactions.  Shaw has not shown that Count I cannot reasonably be construed to allege a crime under the Motta/Wells rule.[10]

Having concluded that the Indictment can reasonably be construed to charge the offense of Computer Fraud 3, we now turn to whether Shaw has shown that she was prejudiced under the Motta/Wells rule.

> [I]n determining whether the accused's right to be informed of the nature and cause of the accusation against him or her has been violated, we must look to all of the information supplied to him or her by the State to the point where the court passes upon the contention that the right has been violated.

State v. Hitchcock, 123 Hawaiʻi 369, 379, 235 P.3d 365, 375 (2010) (emphasis and original brackets omitted).  Furthermore, "a defendant's right to be informed of the nature and cause of the accusation can be deemed satisfied if the record 'clearly demonstrate[s] the defendant's actual knowledge' of the charges against him or her."  Id. (alteration in original) (quoting State v. Israel, 78 Hawaiʻi 66, 71, 890 P.2d 303, 308 (1995)).

As Shaw only challenges the sufficiency of the Indictment for the first time on appeal, we look to the record below to determine whether Shaw's right to be informed of the nature and cause of the accusations can be deemed satisfied.  The record reflects that, at the grand jury proceedings, the State introduced exhibits that consisted of copies of the 105 credit card receipts, as well as a spreadsheet that summarized the

---

[10]    We emphasize that, with the facts in this case, our analysis is based on the liberal construction standard and we do not address whether an analysis under the standard governing pre-conviction challenges to sufficiency of charges would reach a different result.

transactional details of the 105 credit card receipts. In a Motion to Dismiss filed by Shaw, she refers to these documents as appearing to be duplicates of what was produced in discovery, indicating her receipt of the documents. Shaw also specifically acknowledges and discusses the State's aggregation of the amounts involved in multiple credit card transactions upon which the charge was based. Thus, the record is clear that Shaw was fully aware that the charge was based on aggregated amounts. We therefore find no merit in Shaw's contention that she was not provided adequate notice of the nature of the charge against her.

We also find no merit in Shaw's contention that she suffered prejudice because the State was relieved of its burden to call all 105 witnesses and Shaw was deprived of her right to confront all 105 witnesses. The prosecution is not required to call as witnesses all individuals who have knowledge of the events disclosed by the evidence and pertaining to the offense alleged to have been committed by the defendant. See State v. Padilla, 114 Hawaiʻi 507, 516, 164 P.3d 765, 774 (App. 2007). Indeed, the record reflects that the jury in this case was given an instruction stating such, to which Shaw made no objection.[11] The State therefore did not have a burden to call all 105 cardholders as witnesses and could instead rely on other evidence.

Shaw has not shown that Count I cannot be construed to charge Computer Fraud 3, or that she has suffered prejudice from the State's failure to allege a scheme or course of conduct in Count I. Therefore, under the liberal Motta/Wells rule, Shaw has not shown that Count I was insufficient so as to warrant vacating

---

[11] The jury instruction was based on Hawaiʻi Pattern Jury Instructions - Criminal (HAWJIC) Instruction 3.12 (1991) and provided as follows:

> The prosecution is not required to call as witnesses all persons who may have been present at any of the events disclosed by the evidence or who may appear to have some knowledge of these events, or to produce all objects or documents mentioned or suggested by the evidence.

14

her conviction of Computer Fraud 3.

### 2. Count II (Credit Card Fraud) was legally insufficient.

For Count II, the charge appears to substantially track the language of the statute for Credit Card Fraud, with one notable difference -- the plain language of HRS § 708-8100(1)(c) is written in the singular, indicating that the offense occurs upon a defendant's fraudulent use of a single credit card, but the State charged Shaw with Credit Card Fraud based on her use of multiple credit cards. Under HRS § 708-8100(1)(c), a person commits Credit Card Fraud if the person "[u]ses or attempts or conspires to use a credit card number without the consent of the cardholder for the purpose of obtaining money, goods, services, or anything else of value." (Emphases added.) Here, the State charged Shaw with "us[ing] credit card numbers without the consent of the cardholders" (emphases added) to obtain money in excess of $300 between January 16, 2017, and May 18, 2017. The State met the $300 threshold to charge Shaw with Credit Card Fraud as a class C felony[12] by aggregating numerous transactions involving multiple credit cards because none of the individual transactions exceeded $300 in value.

Shaw argues that the State was not allowed to aggregate the use of multiple credit cards in charging Shaw with Credit Card Fraud. Shaw further argues that if such aggregation is allowed, then pursuant to HRS § 708-801(6), the State was required to allege a scheme or course of conduct in Count II to provide Shaw with adequate notice and alert her of precisely what she needed to defend against to avoid a conviction.

We first look to the plain language of HRS § 708-8100 in determining whether the offense of Credit Card Fraud can be based on an aggregation of transactions involving multiple credit cards. See State v. Demello, 136 Hawaiʻi 193, 195, 361 P.3d 420,

---

[12] Credit Card Fraud is a class C felony "if the value of all money, goods, services, and other things of value obtained or attempted to be obtained exceeds $300 in any six-month period." HRS § 708-8100(2).

422 (2015) ("The plain language of a statute is 'the fundamental starting point of statutory interpretation.'").  The plain language of HRS § 708-8100 is written in the singular, indicating that the offense is committed based on the use of "a credit card" or "a credit card number" "without the consent of the cardholder."  Further, subsection (2) expressly contemplates aggregation of the value of the goods obtained through fraudulent use by referring to "goods, services, and other things of value" in the plural.  HRS § 708-8100(2).  In the following sentence, it seems the legislature intentionally refers to "each separate use of a credit card" that exceeds $300 as creating a separate offense.  Id. (emphasis added).  Thus, the legislature carefully distinguished between singular and plural forms in the same statutory provision, indicating an intent to proscribe the fraudulent use of "a credit card," and to provide for the aggregation of dollar values obtained through such use.  In this context, the legislature did not provide for the aggregation of transactions involving multiple credit cards.

The use of singular language, however, is not conclusive.  AlohaCare v. Ito, 126 Hawaiʻi 326, 347, 271 P.3d 621, 642 (2012).  HRS § 1-17 (2009) provides the general rule of statutory construction that "[w]ords . . . in the singular or plural number signify both the singular and plural number[.]"  Nonetheless, "[t]his court has interpreted statutes using the statutory presumption in HRS § 1-17 only after reviewing the legislative history and context in which a statute was passed to determine whether the legislature intended to signify both the singular and plural forms of a word."  AlohaCare, 126 Hawaiʻi at 347, 271 P.3d at 642.  Thus, we must look to legislative history to determine whether the legislature intended prosecution for the offense of Credit Card Fraud under HRS § 708-8100 to be based on the use of multiple credit cards or credit card numbers.

The original form of the Credit Card Fraud statute was first enacted in 1965, along with other credit card offenses.

16

1965 Haw. Sess. Laws Act 189, § 2 at 267.  The legislature explained:

> The purpose of this bill is to set forth criminal offenses involving credit cards and penalties relating thereto.
>
> Your Committee finds that both consumers and businessmen have suffered substantial losses because of the wrongful use of credit cards.  Many frauds are incurred where a credit card is lost or stolen and subsequently misappropriated.

H. Stand. Comm. Rep. No. 252, in 1965 House Journal, at 596. There is nothing in the legislative history of the original Credit Card Fraud statute to indicate that the legislature intended to signify both singular and plural forms of the phrases "a credit card," "a credit card number," and "without the consent of the cardholder."  See id.; H. Stand. Comm. Rep. No. 441, in 1965 House Journal, at 650; S. Stand. Comm. Rep. No. 697, in 1965 Senate Journal, at 1113.  Neither does the legislative history of subsequent amendments to the statute contain any indication that the legislature intended the offense to be prosecuted based on multiple credit cards or credit card numbers.  Conf. Comm. Rep. No. 94-06, in 2006 House Journal, at 1813, 2006 Senate Journal, at 946-47; S. Stand. Comm. Rep. No. 3215, in 2006 Senate Journal, at 1557; H. Stand. Comm. Rep. No. 665-06, in 2006 House Journal, at 1359-60; H. Stand. Comm. Rep. No. 1173-88, in 1988 House Journal, at 1257-58; S. Stand. Comm. Rep. No. 2138, in 1988 Senate Journal, at 921; S. Stand. Comm. Rep. No. 820-86, in 1986 Senate Journal, at 1168-70; S. Stand. Comm. Rep. No. 569-86, in 1986 Senate Journal, at 1036-37; H. Stand. Comm. Rep. No. 487, in 1985 House Journal, at 1216-18; H. Stand. Comm. Rep. No. 815, in 1983 House Journal, at 1216; S. Stand. Comm. Rep. No. 381, in 1983 Senate Journal, at 1201; S. Stand. Comm. Rep. No. 1120, in 1977 Senate Journal, at 1300; H. Stand. Comm. Rep. No. 253, in 1977 House Journal, at 1394-95; S. Stand. Comm. Rep. No. 1069-74, in 1974 Senate Journal, at 1167; H. Stand. Comm. Rep. No. 470-74, in 1974 House Journal, at 741; H. Stand. Comm. Rep. No. 240-74,

in 1974 House Journal, at 649; S. Stand. Comm. Rep. No. 893-70, in 1970 Senate Journal, at 1409-10; H. Stand. Comm. Rep. No. 536-70, in 1970 House Journal, at 1055-58; H. Stand. Comm. Rep. No. 317-70, in 1970 House Journal, at 904-05.

In the absence of any legislative history indicating that the legislature intended Credit Card Fraud to be prosecuted as a felony based on multiple credit cards or credit card numbers, we rely on the legislative intent expressed in the plain language of the statute, as analyzed above, without resorting to HRS § 1-17.

Furthermore, in analyzing HRS § 851-4 (Supp. 1982),[13] the predecessor statute to HRS § 708-8100, this court has held that "[t]he utility of the six-month period is . . . to cumulate the number of fraudulent uses of the same credit card and aggregate the value of the goods during such period to permit a felony charge[.]" State v. Daly, 4 Haw. App. 52, 56, 659 P.2d 83, 86 (1983) (emphasis added).  Thus, under HRS § 708-8100(2), the offense of Credit Card Fraud can be charged as a class C felony by aggregating the dollar values of multiple transactions involving the same credit card, but not by aggregating the values of multiple transactions involving more than one credit card or credit card number.

Based on the foregoing, we conclude that Count II was

---

[13]     HRS § 851-4 (Supp. 1982) provided:

> **§851-4  Fraudulent use of credit cards, etc., penalties.** A person, who, with intent to defraud the issuer, a person or organization providing money, goods, services, or anything else of value, or any other person, . . . (2) obtains or attempts or conspires to obtain money, goods, services, or anything else of value by representing without the consent of the cardholder that he is the holder of a specified card or by representing that he is the holder of a card and such card has not in fact been issued, violates this section and is subject to the penalties set forth in subsection 851-10(a), if the value of all money, goods, services, and other things of value obtained or attempted to be obtained in violation of this section does not exceed $100 in any six-month period; and is subject to the penalties set forth in subsection 851-10(b), if such value exceeds $100 in any six-month period.

18

defective for improperly aggregating the values of transactions arising from multiple credit cards and thus cannot reasonably be construed to charge the offense of Credit Card Fraud under HRS § 708-8100 as a class C felony.  We therefore vacate Shaw's conviction for Count II.

## B.    Motion to Dismiss the Indictment

Shaw contends that the circuit court should have granted her Motion to Dismiss because the evidence that the State adduced before the grand jury was insufficient to establish probable cause for the charged offenses.

Regarding Count II, we conclude that there was insufficient evidence to establish probable cause that Shaw committed Credit Card Fraud as charged.  In light of our conclusion discussed *supra* that Credit Card Fraud cannot be charged as a class C felony by aggregating the values of transactions involving multiple credit cards or credit card numbers, we further conclude that there was insufficient evidence to establish probable cause that Shaw used a single credit card or credit card number without the consent of the cardholder to obtain money in excess of $300.  See HRS § 708-8100(1)(c), (2). The circuit court therefore erred in not dismissing Count II.

As for Count I, Computer Fraud 3, Shaw's challenge to the Motion to Dismiss has no merit on appeal.

> In State v. Montgomery, 103 Hawai'i 373, 381, 82 P.3d 818, 826 (App. 2004), we held that the defendant could not challenge, on appeal, the denial of his or her motion to dismiss the indictment for lack of probable cause after a conviction.  In support of our holding, we cited In re Doe, 102 Hawai'i 75, 78, 73 P.3d 29, 32 (2003), in which the Hawai'i Supreme Court stated that "absent unusual circumstances, any defects in a pretrial determination of probable cause are rendered moot, or are without any effective remedy, which is much the same thing, by a subsequent conviction."

State v. Torres, 122 Hawai'i 2, 14 n.7, 222 P.3d 409, 421 n.7 (App. 2009), aff'd and corrected on other grounds by 125 Hawai'i 382, 262 P.3d 1006 (2011).  Shaw's challenge to the circuit court's denial of her motion to dismiss the Computer Fraud 3

charge based on a lack of probable cause was rendered moot by her subsequent conviction of the offense after trial.  There are no unusual circumstances in this case.

## C.   Jury Instructions

Shaw challenges the definition of "inference" given in the circuit court's jury instructions.  At trial, defense counsel objected to the instruction with the definition of "inference" on the basis that there was already a separate general instruction, based on HAWJIC, that discussed circumstantial evidence, which permits reasonable inferences to be drawn.

The circuit court instructed the jury on the definition of "inference" as follows:

> An "inference" is a logical and reasonable conclusion of the existence of a fact from the establishment of other facts, from which, by the process of logic and reason, and based on human experience, the existence of an assumed fact may be concluded by the jury.  Lack of consent may be proved circumstantially on the basis of logical and reasonable inferences drawn from the evidence adduced and common human experience.

On appeal, Shaw argues that the given definition was confusing, unclear, unhelpful, and failed to instruct the jury in a manner that they could understand.  Shaw cites no authority to support her conclusory assertions.  Shaw also argues that the given definition for "inference" was misleading and prejudicial as it contradicted the concept of reasonable doubt, which prohibits finding the defendant guilty based on mere suspicion or probability.

The definition of "inference" given in this instruction is identical to the definition adopted by the Hawaiʻi Supreme Court in State v. Pone, 78 Hawaiʻi 262, 273, 892 P.2d 455, 466 (1995), and is thus a correct statement of the law.  Furthermore, we find nothing in the given instruction that is inconsistent with the law pertaining to reasonable doubt.  As such, we conclude that the jury instruction was not erroneous.

Shaw next challenges the circuit court's instructions

on the elements of Computer Fraud 3.[14]  Shaw did not raise any
objection to this jury instruction at trial.

The circuit court instructed the jury on the elements
of Computer Fraud 3 as follows:

> In Count I, the Defendant, Susan E. Shaw, is charged
> with committing the offense of Computer Fraud in the Third
> Degree.
>
> A person commits the offense of Computer Fraud in the
> Third Degree if she accesses a computer, computer system, or
> computer network with the intent to commit the offense of
> theft in the third degree.
>
> There are two elements to the offense of Computer
> Fraud in the Third Degree, each of which the prosecution
> must prove beyond a reasonable doubt.
>
> These two elements are:
>
> 1.    That on or about the January 16, 2017, through
>       and including the May 18, 2017, in the City and
>       County of Honolulu, State of Hawaii, the
>       Defendant, Susan E. Shaw, accessed a computer,
>       computer system, or computer network; and
>
> 2.    That the Defendant, Susan E. Shaw, did so with
>       the intent to commit the offense of theft in the
>       third degree.
>
> A person commits the offense of theft in the third
> degree if she obtains or exerts unauthorized control over
> the property of another, the value of which exceeds $250.00,
> with intent to deprive the person of that property.

Shaw reiterates her contention that the State could not
aggregate theft amounts for the purpose of charging Shaw with
Computer Fraud 3.  Shaw further argues that, with the aggregated
nature of the charge, the circuit court erred in failing to
instruct the jury on the definition of scheme and the mens rea
related to Shaw's intent to engage in a scheme.

As we have discussed *supra*, the State was allowed to
aggregate the amounts upon which the Computer Fraud 3 charge was
based, pursuant to HRS § 708-801(6).  However, in <u>Yokota</u>, the

---

[14]    Shaw also challenges the jury instruction on the elements of Credit
Card Fraud.  However, because we vacate Shaw's conviction for Credit Card Fraud
on the basis of a legally insufficient charge, we need not address the portion of
Shaw's challenge to the jury instructions that relates to the Credit Card Fraud
charge.

supreme court emphasized that the question of "whether a continuing course of conduct offense occurred is a question that should be submitted to the jury." 143 Hawaiʻi at 206, 426 P.3d at 430 (citing State v. Matias, 102 Hawaiʻi 300, 305, 75 P.3d 1191, 1196 (2003) ("The test to determine whether the defendant intended to commit more than one offense is whether the evidence discloses one general intent or discloses separate and distinct intents. . . . All factual issues involved in this determination must be decided by the trier of fact." (emphasis in original)), and People v. Daghita, 92 N.Y.S.2d 799, 802 (N.Y. App. Div. 1949) ("What is 'separate', what is 'single', . . . are all jury questions both by legal tradition and by necessity. . . . The question of whether the takings were separate or united in purpose was carefully and fairly submitted to the jury as a question of fact[.]")).

Here, the instruction regarding Computer Fraud 3 did not submit to the jury the factual question of whether Shaw engaged in one scheme or course of conduct, in other words, whether the evidence disclosed one general intent or separate and distinct intents. The question was determinative of whether Shaw met the $250 threshold to be convicted of Computer Fraud 3 based on an aggregation of numerous transactions, where none of the individual transactions exceeded $250 in value. Thus, we cannot say that there was no reasonable possibility that the circuit court's failure to submit the issue to the jury contributed to Shaw's conviction; the error was therefore not harmless beyond a reasonable doubt. See Nichols, 111 Hawaiʻi at 337, 141 P.3d at 984. Shaw's conviction for Computer Fraud 3 must be vacated on this ground and remanded for a new trial.[15]

## V. CONCLUSION

Based on the foregoing, we vacate the Judgment of

---

[15] In light of our decision to vacate Shaw's conviction of both counts, we need not address Shaw's remaining points of error.

22

Conviction and Sentence, entered July 11, 2018, by the Circuit Court of the First Circuit, and we remand this matter for a new trial on Count I.

DATED:  Honolulu, Hawaiʻi, May 15, 2020.


On the briefs:

Chad Kumagai,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Taryn R. Tomasa,
Deputy Public Defender,
for Defendant-Appellant.

/s/ Lisa M. Ginoza
Chief Judge


/s/ Derrick H. M. Chan
Associate Judge


/s/ Clyde J. Wadsworth
Associate Judge